## Caudel v. Prewitt et al.

Jan. 28, 1944.

Frank Malin for appellant.

Allen Prewitt for appellee Prewitt.

Hubert Meredith for appellee officials.

G. Conner Ewing pro se.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At the regular 1939 election, appellant, and plaintiff below, J. Sidney Caudel, was elected to the office of Commonwealth's Attorney in the 21st Circuit Court Judical District in the Commonwealth, followed by his qualification and taking office in January, 1940. He continued to fill that position until some time in July, 1942, when he responded to a call by the President for active service in the American fighting forces, pursuant to the provisions of section 351 et seq., 10 U. S. C. A., which statute created the Officers' Reserve Corps, the advantages of which appellant had availed himself many years prior to his election. Shortly after his induction pursuant to that call, he was made a Captain and sent overseas as a soldier in the American army, fighting the present war. He has remained absent from Continental United States continuously since then, with the exception of a brief

return to a hospital in Miami, Florida, for the better treatment of some ailment with which he became seized, but he has never returned to Kentucky since his original acceptance and induction. The short visit to the Miami hospital appears to have occurred before the matters herein involved arose, he being absent from the United States throughout the period that the controversial issues were maturing.

Following his entrance into the army as a soldier and officer therein, and after he had left the United States, a controversy arose as to whether or not his response to the President's call, and his acceptance of the position of Captain in the army pursuant thereto, vacated his civil office, which finally culminated in the conclusion of those taking part in the controversy that there was a vacancy in the civil office and that it should be filled by the Governor of the Commonwealth, until the voters of the district could elect an incumbent for the remainder of the term, which extended to January 1, 1947. However, according to the record the Governor was advised to condition his appointment so as to require his appointee to surrender the office to plaintiff upon his release from army service if that should occur before the expiration of the term for which he was elected. Whether or not that was done in the commission issued by the Governor, who appointed one G. Conner Ewing, is not shown, but there was introduced a letter written by the Governor to the Secretary of State announcing the appointment of Ewing in which no such qualification appears. Hon. W. Bridges White, Judge of the judical district, also wrote a letter to the Governor in which he said that plaintiff "has been inducted into the United States army as a Captain and is now overseas." The writer further informed the Governor that the Attorney General's office had advised that a vacancy in plaintiff's office had resulted and the letter then said: "I suggest that your appointee should agree, at least during the term for which he is appointed, to resign the office in the event that Mr. Caudel should return and desire to resume the duties of the office. This would be fair under the circumstances." That letter was dated September 28, 1942, and the letter of the Governor to the Secretary of State was dated the next day, September 29, 1942.

The appointee, Ewing, thereafter continued to occupy the office of Commonwealth's Attorney of his dis-

trict, and in due time filed his papers with the Secretary of State as a candidate in the primary election to be held in August, 1943, for the filling of the remainder of the term caused by the alleged vacancy. The appellee, Prewitt, also filed with the same officer his papers as a candidate in the same primary election and was nominated thereat as the Democratic candidate to be elected at the following regular election of that year. He was later elected in November. After the election this action was filed by appellant in the Franklin circuit court against the members of the State Election Board seeking an injunction against them, preventing their canvassing the returns or issuing a certificate of election to appellee, on the grounds that he (appellant) had not abandoned his civil office nor did any of his acts as above enumerated conflict with any constitutional or statutory provisions of the Commonwealth so as to create a vacancy in his civil office. On the contrary, his insistence is that what had transpired had only the effect to suspend his active duties as such civil officer during the period of his emergency military service, and that if it ceased before the term of his civil office expired, he had the right to reclaim it.

The answer of Prewitt was a denial in general terms of the material allegations of the petition, except it was admitted that plaintiff had been elected to the civil office and had served therein until he became a member of the United States army in the manner above outlined. It was then averred in the same answer, (a) that the army service of plaintiff, as above outlined, was incompatible with the civil office of Commonwealth's Attorney; (b) that plaintiff, by his conduct and his silence in failing to assert his claim before the primary and regular elections in 1943, abandoned his civil office, and also estopped himself· from now contending otherwise, and (c) that section 237 of our Constitution ipso facto created a vacancy in the civil office of Commonwealth's Attorney upon plaintiff's response to the call made upon him by the President of the United States.

In the meantime Prewitt by proper pleading made Ewing and the Attorney General of the Commonwealth parties to the action, but neither· of them filed any pleading or took any part in any manner in the proceeding, although Ewing testified by deposition (which was taken by the defendant, Prewitt) and which was the only testimony introduced at the hearing. The court on

submission adjudged "that a vacancy existed in the office of Commonwealth's Attorney for the Twenty First Judical District of Kentucky more than sixty (60) days prior to the August 1943 Primary Election held therein and that the defendant, H. Reid Prewitt, is the duly elected and is entitled to be qualified as said Commonwealth's Attorney, and is entitled to the certificate of election thereto," and thereby dismissed the petition, to reverse which this appeal is prosecuted.

Ground (a) is not sustained by section 165 of our Constitution, since it applies only to state, county and municipal officers. Therefore, the incompatibility relied on must emanate from the common law, and the cases and authorities hereinafter cited in disposing of ground (c) refute the relied on ground of incompatibility under parallel facts by pointing out that incompatibility at common law is not based merely on the filling of two offices by the same incumbent but upon the fact that the duties of the two places conflict, whereby disloyalty for full performance of both would be created, thereby creating inefficiency of the same incumbent in the discharge of his dual official duties. If, therefore, the duties of appellant, and plaintiff, in his civil office are merely suspended during the military service, during whch period a substitute may be appointed, or designated, no conflict of loyalty to duty arises during the suspended period.

Ground (b), as we have above stated it, embraces both abandonment of his civil office, and estoppel by him to now claim otherwise. The ceasing to actually serve in the civil office to which he was elected was in response to a call which he was compelled to obey, unless physically or mentally disqualified, and some of the authorities hereinafter cited logically and rightfully hold that such an enforced military service does not create permanent abandonment of an office within the contemplation of the law. But counsel for defendant, Prewitt, insists that the training which plaintiff obtained in accepting the provisions of the Federal Statute creating the Officers' Reserve Corps, was voluntary on his part and a consent by him that he might, after taking such training, be called by the President of the United States to serve in the United States army during the emergency condition created by the present war, and having so consented he occupies a different status than did Dixon in the case of Baker v. Dixon, 295 Ky. 279, 174 S. W. (2d) 410,

who, as it appears from the opinion, was originally a draftee as a private in the army, though the record shows that at the time of the commencement of that litigation he had become an officer in the army but, perhaps, a non-commissioned one. It is argued, therefore, that plaintiff, and appellant, by voluntarily taking the training provided by the Officers' Reserve Corps created by Federal Statute, thereby consented to be drafted by the President whensoever needed in emergency for military service throughout the emergency period; whilst a selectee under the National Selective Service Act, 50 U. S. C. A. Appendix sec. 301 et seq., never voluntarily consented to qualify himself for his selection. But that argument is likewise repudiated by subsequently cited authorities under the discussion of ground (c). The reason given therefor is that the first duty of a citizen of the United States is loyalty to his country and to be ready to respond to his country's call whenever its existence is assailed by either internal or external assaults of enemies seeking its destruction, and that any act on the part of the citizen, by equipping or voluntarily qualifying himself to perform such emergency military duty should not be penalized by vacating his civil office, then held by him, when he is called upon to exercise temporarily such primary loyalty. Even technical draftees might voluntarily aid in their being selected when the true facts might have excused them or postponed their selection at the date they were drafted, which could be done by the suppression of facts necessary to bring the draftee within the class of selectees then being made.

According to the argument of counsel if the draftee held any civil office at the time he was drafted and his drafting had been brought about by his own participation seeking that result, and contrary to the then existing facts, he would forfeit any civil office he might hold by creating an abandonment thereof, voluntarily consented to. We are not inclined to accept that argument, but to approve the more enlightened, as well as the more liberal interpretation that abandonment of a civil office does not result from responding to a mandatory call for military service in emergency conditions threatening the continued existence of the nation and to hold that the performance of the duties of the civil office by the draftee, howsoever brought about, is merely suspended during the emergency.

So far in the discussion of the abandonment defense we have considered only its legal phase. However, plaintiff expressly refused to abandon his office in a joint letter he wrote to Ewing and Judge E. C. O'Rear in answer to one written by them in which there was enclosed a written unsigned resignation by plaintiff of his office of district Commonwealth's Attorney, which he declined to sign, and suggested that Judge White, the presiding circuit judge of the district, should fill by appointment, which necessarily meant pro tempore appointments as is prescribed in KRS 69.060. That section creates a means whereby a substitute Commonwealth's Attorney may be appointed by the presiding judge for each term of court in his district, or a part of the term, when the Commonwealth's Attorney is absent, it being applicable in supplying such absence at each particular term of court. It nevertheless makes provision for the presence of a Commonwealth's Attorney during the regular officer's absence for whatever cause, unless his absence has been produced by lawful abandonment of his office. In addition, our statutory law prescribes that county attorneys shall assist Commonwealth's Attorneys in representing the Commonwealth in all criminal trials in the circuit court. Such provisions supply ample means whereby the interests of the Commonwealth in such trials may be fully protected and enforced; and are as effectual for that purpose as would result from a permanent appointment of another to the office until an election could be had for the remainder of the term.

It was held by us in the early case of Page v. Hardin, 8 B. Mon. 648, 47 Ky. 648, that in order to create an abandonment of an office there must be a mental renunciation of it and before it can arise from non-user the neglect of duties should be total and complete and of such continuance or under such circumstances as to clearly indicate absolute intentional relinquishment so as to preclude "all future question of the facts." See also to the same effect 43 Am. Jur. 227, sec. 173 and 46 C. J. 980, sec. 137. The facts in this case do not disclose any such absolute renunciation of plaintiff's civil office. There is no evidence covering the period of his silence that he knew of the efforts being made back home to substitute another to fill his civil office (on the theory of a vacancy) either by appointment or election. On the contrary, as we have seen, he declined to resign his office and recommended a method of filling it with another

who possessed only temporary rights to so function, but which could be repeated at each term of court throughout the suspension of his term of office.

Also the same fact of ignorance on his part refutes the creation of an estoppel, even if one would arise if he had known the facts, which is doubtful, since the estopee was more, or at least as much, familiar with the facts as was plaintiff, and he voluntarily sought the office and incurred his expenses in doing so with a full knowledge of those facts. In other words, plaintiff according, to the record, did nothing to induce the belief that he had abandoned his civil office, and to thereby cause appellee to take the action that he did which he now says would be to his detriment if he should not be permitted to qualify. But there can be no estoppel in favor of one who has not acted upon facts which were in some manner misrepresented to him by the one estopped, and but for which misrepresentation he would not have acted.

We come now to a determination of ground (c) relied on by defendant in defense of plaintiff's petition. It is, as we have said, bottomed on section 237 of our Constitution, saying: "No member of Congress, or person holding or exercising any office of trust or profit under the United States, or any of them, or under any foreign power, shall be eligible to hold or exercise any office of trust or profit under this Constitution, or the laws made in pursuance thereof." Manifestly its application to the facts of this case is determinable from the interpretation to be given to its language. It will be seen that its inhibition against eligibility "to hold or exercise any office of trust or profit under this (state) Constitution, or the laws made in pursuance thereof" consists in "holding or exercising an office of trust or profit under the United States, or any of them, or under any foreign power." The question at once arises as to what was contemplated by the makers of our Constitution by the language, "office of trust or profit under the United States, or any of them," etc., so as to render the officer ineligible to hold an office of profit or trust under it or the laws made pursuant thereto. Counsel for appellee, Prewitt, contends that the ineligibility to hold a state, county or municipal office of trust and profit in this Commonwealth, ipso facto results from the acceptance of any military office under the laws of the United States, regardless of whether or not the Federal military service was for a temporary emergency but indefinite period, as

well as an acceptance of the military office professionally and as a permanent career. In the case of Baker v. Dixon, supra, there are listed many cases from state jurisdictions, as well as some federal cases, construing similar language to that contained in our Constitutional section 237, as contemplating an ineligibility to hold state offices or that of any of its subdivisions, only when the incumbent accepts an office in another jurisdiction professionally and as his chosen permanent occupation. Those cases so listed in the Baker opinion interpreted and so applied similar language in the Constitutions of the states of the courts rendernig them, as excluding from eligibility to hold state offices, temporary or emergency service in the United States army and that ineligibility to hold state offices does not result from rendering such emergency service, but only when the incumbent of the state office accepts the foreign military service as a permanent profession, or means of livelihood. Such interpretation is based upon the idea that the makers of such Constitutional provisions never intended to penalize a state officer, or one in any of its sub-divisions, with forfeiture of his civil office when called upon to temporarily defend his national government from attacks by enemies seeking its destruction; but rather should the interpretation be made which would preserve the civil office so as to permit the temporary emergency serving officer to regain it when the emergency was over, his functions in the civil office being only suspended during such emergency service in the national government. That interpretation was emphatically approved by us in the Baker opinion which contained no distinguishing fact from those in this case, except the one hereinbefore referred to, and which we conclude should not vary the interpretation so made in that case as to render it inapplicable to the facts of this one.

The cases so interpreting Constitutional provisions similar to section 237 of our Constitution are: Critchlow v. Monson, 102 Utah 378, 131 P. (2d) 794; In re Opinion of the Justices, 507 Mass. 613, 29 N. E. (2d) 738.; In re Advisory Opinion to Governor, 150 Fla. 556, 8 So. (2d) 26, 140 A. L. R. Annotation page 1481; McCoy v. Board of Supervisors of Los Angeles County, 18 Cal. (2d) 193, 114 P. (2d) 569; State ex rel. McGaughey v. Grayston, 349 Mo. 700, 163 S. W. (2d) 335. State ex rel. Thomas v. Wysong, W. Va., 24 S. E. (2d) 463 and Sheppard v. Carpenter, 312 U. S. 697, 61 S. Ct. 734, 85 L. Ed.

1132, the latter being one denying a writ of certiorari from the Supreme Court of Texas, 135 Tex. 413, 145 S. W. (2d) 562, in which it was held that temporary and emergency military service in an official capacity in response to a call by the United States Government, during emergency conditions, was not the acceptance of an office of the United States Government rendering the incumbent ineligible to continue to hold his civil office. There are a number of other cases cited in the Baker opinion holding that a Captain of the National Guard who had been inducted into the United States military service did not forfeit his civil office, which was the holding of this court in the case of Kennedy v. Cook, 285 Ky. 9, 146 S. W. (2d) 56, 132 A. L. R. 251. The latter opinion, however, was exclusively confined to the facts of that case, which were that the civil office holder was a member of the National Guard (State Militia) rendering himself subject to call by the United States Government when an emergency existed and that the service in the United States army was rather as a National Guardsman than a United States regular soldier. But the opinion contains nothing militating against the interpretation by the cited foreign cases supra, since the exact queston was not presented in the Kennedy case.

The Baker opinion also points out that the court in the cases of Com. ex rel. Crow v Smith, 343 Pa. 446, 23 A. (2d) 440. State ex rel. Cooper v. Roth, 140 Ohio St. 377, 44 N. E. (2d) 456, and Perkins v. Manning, 59 Ariz. 60, 122 P. (2d) 857, adopted a contrary holding, to the effect that the acceptance of a military office under a foreign jurisdiction—whether temporary or otherwise—by a civil office holder forfeited the latter office and deprived the incumbent of the right to reclaim it, notwithstanding his foreign service may have been temporary and for only emergency purposes.

The first cases cited supra, including our opinion in the Baker case, rejected the holding of the courts in the latter cited cases, and we would be compelled, in effect, to overrule the Baker opinion if we should adopt the contention of appellee's counsel. We are not convinced that we should do so, since we agree with the reasoning in the Baker opinion, as well as that in the cases first cited supra, that we should construe section 237 of our Constitution, so as to give a civil office holder the right to resume the functions of his office after being called upon to serve his country temporarily under an emer-

gency (but not professionally) even though in doing so he might function as an officer in the temporary defense of his country. As suggested in some of the cases first cited above, it should not be concluded that by the adoption of constitutional sections similar to 237 of our Constitution, it was meant to deprive a civilian office holder of his office when he was temporarily fighting to preserve intact the same Constitution of which the section is a part, unless the language to be construed mandatorily required it.

Wherefore, for the reasons stated, the judgment is reversed with directions to set it aside and to make permanent the temporary restraining order issued by the clerk upon the filing of the petition.

The Whole Court sitting.