## Hogg v. Miller, Commissioner of Finance, et al.

June 16, 1944.

A. E. Funk and Sarah Layman for appellants.

Eldon S. Dummit, Attorney General; M. B. Holifield, Assistant Attorney General, for appellees, Clarence Miller, Commissioner of Finance, and Thomas W. Vinson, Treasurer.

Ed. C. O'Rear for intervening petitioner, Daniel Boone Smith.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At the regular 1939 election the appellee, and cross-appellant, Daniel Boone Smith, was elected Commonweath's Attorney for the 26th Judicial District of Kentucky composed of the counties of Bell and Harlan, and at the same election the Honorable J. S. Forester was elected Judge of the District. They were each inducted into office for a full term of six years in the early part of January, 1940. Smith continued to serve as such officer until July 28, 1942, when he voluntarily entered the military service by accepting a commission as First Lieutenant of the Air Corps of the United States fighting forces, a branch of the military service, and entered the training camp for such service at Camp Douglas, Wisconsin. He was later promoted to the office of Captain in the same service.

At the time of his voluntary entry into the service he had not quite reached the maximum age for the draft limit, and perhaps it was the anticipation that he might soon be drafted or selected that induced him to voluntarily act before he was drafted. At any rate it appears from the record that some discussion was indulged in as to the effect upon the office of such voluntary action on his part as de jure incumbent, and it is clear that he himself was aware of the difference of opinion pertaining to that question, i. e., whether or not the voluntary acceptance of the service and entry in the military personnel of the Army, ipso facto vacated his office. But, however that may be, he, on August 18, 1942—twenty-one days after his entry into the service—addressed a letter to Honorable Keen

Johnson, then Governor of the Commonwealth, which, omitting caption, address and signature, says:

"I have just sent you a wire asking you to withhold the appointment of some person to fill the office of Commonwealth's Attorney in the 26th Judicial District, until I could write you. Naturally if the appointment has already been made, the entire matter can just be forgotten.

"I have decided to take no part in the matter of who shall be appointed in my place, but if this request is not out of line, I should like for you to consider it before any action is taken.

"As you can readily see, I am losing considerable money by entering the Army Air Forces, and giving up both the income from my office and private practice. I had made certain arrangements with other attorneys to conclude my legal work, and to so arrange matters that I could entirely forget them, and devote all my interest to my work here. I have an office, library and many records in the Court House. What I would like to ask is this. Since there is only one more term of criminal court in each county of the district (Harlan and Bell) would you consider making no appointment until the beginning of the year. Allow the Circuit Judge to make pro temp appointments for those. My fees for this year have almost equalled my limit, and if another attorney is appointed there might result some action for apportionment of fees, and by allowing this to be done, I can eliminate all possibility of such an action, get my work finally and definitely wound up, the new man, whoever he may be start at the beginning of the year, and no complications. I would waive all fees or any claim to them for the remainder of the year. If this request appeals to you as reasonable, and worthy of consideration, will you kindly advise me.

"I assure you that I will appreciate your help if you feel like you can assist me under the circumstances. With kindest regards; * * *."

To that letter the Governor made this reply on September 4, 1942, caption and signature omitted:

"In reply to your letter of August 18, please be advised that in my judgment the request contained in your letter should be complied with. I am glad to in-

form you that the suggestions you make will be followed and that it is not my purpose to make an appointment of your successor until the beginning of the year, unless some circumstances may arise which alters the situation.

"If the arrangement you suggest works out satisfactory and is acceptable to the Circuit Judge and the people in the 26th Judicial District, we plan to follow your proposal. I am concurring with your suggestions with reservations because I understand there is a possibility that the legality of such procedure may be questioned and might result in court action.

"I congratulate you on your decision to enter the Army, and you have my best wishes."

Eighteen days thereafter, and on September 22, 1942, the Governor wrote this letter to Captain Smith, which, omitting caption and signature, says:

"On September 4 I wrote to you that it would be my disposition to comply with your request to defer the appointment of a successor as Commonwealth's Attorney until the first of the year. The reasons you gave for the request appeared to me to justify the deferment.

"However, since writing you much agitation has developed in Harlan County for an immediate appointment of Commonwealth's Attorney. I have a letter from Judge Forester in which he indicates that there are numerous important criminal cases to be tried at the October term of court. He suggests that whoever serves as Commonwealth's Attorney should have time to acquaint himself with the evidence in these cases before they are called for trial. He points out also the need of a Commonwealth's Attorney to sign the indictments made by the grand jury.

"I have a letter from the minister of one of the leading churches in Harlan insisting that there should be an immediate appointment of a Commonwealth's Attorney in order that he might prepare the prosecution of criminal cases now on the docket.

"It was pointed out in an editorial comment in the Harlan Enterprise that if Judge Forester has the authority to name a special Commonwealth's Attorney, he could do it only when court has been convened, which

will not solve the problem of providing a Commonwealth's Attorney to prepare to meet the responsibilities of the approaching criminal docket. It is insisted that it is the responsibility of the Governor to name a Commonwealth's Attorney now or jeopardize the court docket and public interest.

"In view of these developments and the agitation which has arisen in the district, I am convinced that it is best for me to make an appointment.

"I hope you will understand the situation and will recognize the necessity for the conclusions reached."

Following the writing of that second letter the Governor appointed and commissioned the appellant, Astor Hogg, as de jure officer until the vacancy (if one existed) could be filled by an election by the voters of the district to be held at the regular election in November, 1943. At the primary election for that year appellant was nominated as the Democratic candidate, and at the regular election in November of the same year he was duly elected to the office and continued to serve from and after his appointment and qualification and following his election in 1943 until the present time.

In January, 1944, after the official appellees had been installed in their respective offices, the Finance Commissioner, Honorable Clarence Miller, declined to issue his warrant upon the Treasurer for the payment of compensation then due appellant, Hogg, and he filed on March 13, 1944, this declaratory judgment action in the Franklin circuit court against those officers, in which he alleged the above facts, and prayed that he be adjudged the de jure title holder of the office and that the official defendants be required to take the necessary lawful steps for the payment of his compensation. Later Captain Smith filed in the action his intervening petition which he made a cross-action against plaintiff, Hogg, and against the official defendants in plaintiff's petiton. In that pleading he contended that there was never a vacancy in his office to fill with any appointment by the Governor, and that he was entitled to the compensation earned following appellant's appointment, and likewise following his subsequent election to fill the alleged vacancy. However, he did offer to credit the amount of such compensation by what would have been the legal compensation of a pro tempore appointment by the circuit judge for each term

of the court following his entry into the military service. The official defendants filed answer in which they alleged that there was no vacancy created in Captain Smith's office and, therefore, the appellant, Hogg, notwithstanding his alleged appointment by the Governor—and his later election in 1943—was only a de facto officer who, under well-settled principles of the law, is not entitled to demand or receive compensation for his services, although he might not be required to return compensation already paid him, but which latter is not involved in this case, except so far as Captain Smith may have intended by his claiming the right to the compensation throughout the entire service, of appellant Hogg.

The official defendants, as well as intervenor, Captain Smith, filed general demurrers to the petition upon the ground that plaintiff did not in express terms allege that a vacancy in the office of Commonwealth's Attorney existed when he was appointed by the Governor, nor when he was elected in November, 1943. However, the petition does allege that plaintiff's installation as a de jure officer was made "to fill out the remainder of a term for which a Commonwealth's Attorney had been elected at the regular 1939 general election," which to our minds is tantamount to saying that there was a vacancy in the office with a portion of an unexpired regular term without an incumbent, and which, we repeat, as being tantamount to saying that a vacancy existed.

But, however, that might be, the answers of the official defendants, as well as the answer and cross-petition of Captain Smith, both affirmatively alleged that there was no vacancy in the involved office at either of the times when plaintiff was inducted into it and which plaintiff's following pleadings denied. Therefore, if it should be held that plaintiff's petition was technically defective in the respect indicated, the defect was cured by the pleading of opposing litigants and the issue was fought out before the court mainly and chiefly upon that issue. Besides, attorneys for all interested parties waived any such defect, even if one existed, in the oral argument of the case in this court by stating that they desired a decision of the case upon its merits regardless of technical errors. In his pleadings appellant averred in substance that Captain Smith was estopped to contest the question of vacancy or no vacancy

since he was fully aware of not only what had been done by himself and others, but that he was also aware of the appointment and subsequent election of plaintiff and of his officiating in the office as a title holder thereof under the claim of a de jure right to do so, and that he was in the district on a visit or leave from his training camp while such services were being rendered by plaintiff, and that he possessed full knowledge of plaintiff's claim to the office, as well as his candidacy for election to the office in 1943. Such allegations are not denied although Captain Smith did allege that he was not in the district on the day that plaintiff was elected to the office but was at home on a leave close to the day of that election.

In the meantime, and with such knowledge, no objection whatever was made by the Captain to any of the matters referred to until after our opinion in the case of Caudel v. Prewitt et al., 296 Ky. 848, 178 S.W. 2d 22, was handed down, which was on January 28, 1944. One month thereafter, and on February 28, 1944, Captain Smith for the first time so far as this record discloses took the position that he had not resigned his office, which was done in an affidavit filed in the Harlan circuit court, a part of which is that: "The affiant further states that at no time did he resign from the Office of Commonwealth's Attorney, and that he at no time had any intention of resigning, and that it has always been his intention to assert his rights after his return from Military Service, knowing that the period of Military Service could not be included in computing time under Statute of Limitations. This by virtue of the provisions of Soldiers' and Sailors' Civil Relief Act [50 U.S.C.A. Appendix, sec. 501 et seq.]"

However, it will be perceived that the claim therein made was long after "the water had passed over the dam" if and provided the affiant had, in effect, surrendered and resigned his office, and especially so if it had been accepted and acted on by the authority having the right to temporarily fill the vacancy by appointment. Upon submission on the issues made by the pleadings the court adjudged and declared that the plaintiff was entitled to all of the compensation allowed by law to the incumbent of the involved office "up to and including the 27th day of March, 1944, the date of the filing of the intervening petition by Daniel Boone

Smith," and the official defendants were directed to take steps to pay him therefor; that Smith by accepting the commission in the Air Forces of the United States Army, under the facts disclosed, did not vacate his office so as to create a vacancy either by abandoning, surrendering or resigning it, but that he was not entitled to be compensated "for any of the time or period covered in this litigation and is not entitled to any of the salary, fines or compensation due the Commonwealth's Attorney in said Judicial District"; that by entering the service in the circumstances and in the manner above indicated, his functioning in the office was merely suspended during the period of his military service which he might resume when released therefrom, if his term of office had not expired. From that judgment plaintiff prosecutes this appeal, and the other parties litigant have prayed and obtained a cross-appeal for all parts of the judgment adverse to them.

It thus becomes obvious that the decisive question in this case is, whether or not plaintiff's acts and conduct, together with the statements he made in his letter of August 18, 1942, to the Governor, as affected by the Governor's letters to him with reference thereto, was or was not, in effect, a voluntary or intentional surrendering or resigning of his office to the official having the sole authority to fill the vacancy? If that question should be answered in the affirmative and the facts held to be a valid relinquishment of title to the office (whether designated as a surrendering or resigning of it), then the Governor had the legal right to make the temporary appointment of plaintiff, and the latter had the right to seek and be elected to fill the unexpired vacancy at the regular election of 1943, which, as we have seen, was done. On the other hand if such actions, words and conduct on the part of Captain Smith did not have such effect, then perhaps the judgment appealed from might be correct. But, since we have determined that Captain Smith did, to all intents and purposes, resign and surrender his office to the Governor of the Commonwealth in his letter of August 18, 1942, no other contention made by either litigant need be discussed or determined nor even pointed out in this opinion, since they all depend on the absence of a vacancy.

It is a fundamental and universally accepted rule in the interpretation of writings or other transactions

of persons that "what is necessarily implied need not be expressly stated." That rule has received undeviating application at the hands of this court, two of the cases being National Surety Co. v. Com. ex. rel. Coleman, 253 Ky. 607, 69 S.W. 2d 1007, and Com. v. Kirk, 212 Ky. 646, 279 S.W. 1091, 44 A.L.R. 816. That principle of law (which is but the embodiment of inescapable logic) applies to the resigning or surrending of title to an office, it being the rule that in the absence of a statutory requirement such surrender or resignation need not be in writing, but may be made by parol with accompanying consent for the appointing authority to act upon the communication made to him, or it, with a view of filling the office with a de jure appointment. Throop on Elections, page 400, section 408. On the same point the text in 43 Am. Jur. page 22, section 165 says: "A resignation of a public officer need not be in any particular form, unless some form is prescribed by statute. Ordinarily, it may be either in writing or by parol. But to constitute a complete and operative resignation of public office, there must be an intention to relinquish a part of the term, accompanied by the act of relinquishment."

Under that rule if the resigning officer says or does enough in his communication to the appointing officer (his letter in this case) to necessarily imply his surrender or resignation of the office then a vacancy is created without an express or literal statement to that effect. The same principle is upheld by other text writers, one of which appears in 46 C.J. 979, section 132; and all of the others on the subject are to the same effect where there is no express statutory provision to the contrary. We have no such in this state.

Furthermore, although some courts hold to the contrary the majority rule is, that when a resignation or surrendering of an office is once made to the appointing authority and accepted, it may not be withdrawn by the officer who made it, unless his resignation was conditioned so as to make it voidable if the condition was not performed. Two cases from this court adopting and approving such majority rule are: Elswick v. Ratliff, 166 Ky. 149, 179 S.W. 11, and Board of Education of Wolfe County v. Rose, 285 Ky. 217, 147 S.W. 2d 83, 132 A.L.R. 969.

Turning now to the letter of Captain Smith address-

ed to the Governor of date August 18, 1942, we find him requesting the Governor "to withhold the appointment of some person to fill the office of Commonwealth's Attorney in the 26th Judicial District, until I could write you," but later said, "Naturally if the appointment has already been made the entire matter can just be forgotten." He then expresses his determination "to take no part in the matter of who shall be appointed *in my place.*" (Our emphasis.) Later on in his letter he suggests, in substantiation of his request to defer the appointment of his successor until the beginning of the year 1943, that the Governor "consider making no appointment until the beginning of the year" stating that between the time of writing the letter and the beginning of the ensuing year, the office might be filled by pro tempore appointments by the circuit judge of the district. Finally, he states that "the new man whoever he may be start at the beginning of the year and no complications," which complications he stated as possibly arising between his successor and himself with reference to fees and compensation to be earned up to the beginning of the ensuing year. According to our conclusion it would be difficult—at least it is beyond our power—to draw any other conclusion than that the writer of the letter intended it to be his unconditioned resignation, with no avoiding condition upon its taking effect, but with only a request which the Governor in his rely thereto on September 4 of the same year agreed to with this reservation: "Unless some circumstances may arise which alters the situation." In the second letter of the Governor dated September 22 of the same year, the Governor set out subsequently arising circumstances which he concluded called for immediate appointment to fill the vacancy in the office, and which he later acted on by appointing and commissioning plaintiff as hereinbefore stated. No response to either of the Governor's letters was ever made nor was any objection ever interposed by Captain Smith against plaintiff's appointment by the Governor, until after the opinion in the Caudel case, supra, was rendered. Moreover, Captain Smith expressed in his letter to the Governor his acknowledgment of the Governor's right to fill the vacancy by appointment if the appointment had been made at the time the Governor received the letter, in which case the writer thereof stated that "the entire matter can just be forgotten."

We are unable to arrive at any other conclusion than that the letter of Captain Smith of August 18, 1942, addressed to the Governor obviously embodied, by necessary implication, a surrendering and resignation of his office, regardless of what the motive may have been, and also regardless of whether or not the writer labored under a mistake of either law or fact in writing it, since after it was written, accepted and acted on it was then too late to attempt to withdraw, qualify or annul the resignation and to reinvest the title to the office in the writer of the letter.

An act of the Captain occurring after plaintiff was appointed by the Governor clearly confirms our interpretation of his letter of August 18, 1942, addressed to the Governor. After plaintiff had been appointed in the latter part of September, 1942, the then State Treasurer sent him a check for his salary for the month of September of that year, which was issued pursuant to a warrant of the then Finance Commissioner so directing. The Captain returned the check to the officer who issued it with a letter in which plaintiff alleged in his reply to the Captain's intervening petition that the latter said, inter alia, that ''he was no longer Commonwealth's Attorney of said judicial district, and therefore was not entitled to the compensation or salary of said office.'' In response thereto the Captain alleged that he did receive the check and returned it to the Treasurer but with the statement ''that the Governor had appointed the plaintiff, Hogg.'' The letter that accompanied the return of the check was not made a part of the record but the admission of Captain Smith as to what he said in that letter does not differ materially from what plaintiff claims that he said therein, since in either event, he declined to cash the check because another had legally been appointed to the office to fill the vacancy that had occurred by his voluntary surrender of his title thereto. That is made manifest even if we accept the Captain's statement as to what his letter contained, since he now claims by his pleadings in this case that he is entitled to collect all of the emoluments of the office accruing while plaintiff was serving under his appointment and his later election. Therefore, his return of the check is susceptible to no other interpretation than that he was no longer entitled to the salary incident to the office because of his retirement therefrom.

The facts of this case are by no means analogous to those appearing in the Caudel case, supra, which involved the same office but for a different judical district. In that case Caudel, the elected de jure officer for a full term, gave forth no expression remotely indicating an intention to abandon, surrender or resign his office after accepting an office in the military service. On the contrary, when called upon to do so he expressly declined. We are therefore driven to the conclusion that the court erred in its judgment declaring that there was no vacancy in the involved office here for the Governor to fill by appointment, or to be filled by an election of the people at the regular 1943 election for the unexpired term, or that as a consequence Captain Smith's right to compensation was only suspended during the period of his military service, with the right on his part to reclaim it when the service ceased, if any portion of the term had not expired.

Wherefore, the judgment and all portions of it inconsistent with this opinion is reversed with directions to enter one conforming to this opinion, and directing the official defendants to honor plaintiff's claim for compensation as a de jure officer, and to proceed according to law for its payment.

The Whole Court sitting.