**Pamela A. WESTLAKE**

v.

**Richard L. WESTLAKE.**

**No. 2004–43–Appeal.**

Supreme Court of Rhode Island.

June 3, 2005.

Robert D. Goldberg, Pawtucket, for Plaintiff.

Carolyn R. Barone, Warwick, for Defendant.

Present: WILLIAMS, C.J., FLAHERTY, SUTTELL, and ROBINSON, JJ.

PER CURIAM.

In this appeal, we are faced with yet another case of family discord that has degenerated into a nasty feud between formerly married spouses, the ultimate victims of which are two now-teenage children. On appeal from a post-final-judgment Family Court placement decision in favor of the plaintiff mother, Pamela A. Westlake, the defendant father, Richard L. Westlake, contends that the trial justice erroneously denied his motion to modify placement of the parties' minor children. Specifically, he asserts that the trial justice's decision regarding physical placement of the minor children was not based on the best interests of the children, and therefore, it should be reversed, and physical placement awarded to him. This case came before the Court for oral argument on May 10, 2005, pursuant to an order directing all parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we will proceed to decide the case at this time. For the reasons stated below, we deny the defendant's appeal.

The parties are the parents of two minor children, a fifteen-year-old son and a twelve-year-old daughter. In September 2001, after deciding to end their marriage, the parties signed a marital settlement agreement that included a visitation arrangement incorporated by reference in the final judgment of divorce. Pursuant to this agreement, the parties shared joint custody of the children, with physical custody awarded to Ms. Westlake, and reasonable visitation rights awarded to Mr.

Westlake.[1] Prior to the divorce, the family resided in Tiverton, where the children attended school and were involved in extracurricular activities. In accordance with the agreement between the parties, Ms. Westlake vacated the marital home in December 2001 and moved with the children to a rented home in nearby Little Compton. The convenience of this arrangement allowed Mr. Westlake to see his children nearly every day of the week.

However, the plaintiff mother wanted to purchase a home for herself and the children. She searched throughout the area, and ultimately settled on a property in Burrillville, where she would be closer to her own family. The children completed the 2001–02 school year in the Tiverton school system and moved to Burrillville with their mother during the following summer. Currently, the children attend Burrillville schools and remain in their mother's home. Because Ms. Westlake's profession demands somewhat unusual work hours, her own mother stays at the home five days a week to ensure that the children are cared for and supervised at all times. Pursuant to the visitation schedule, Mr. Westlake continues to see his children frequently, and he remains involved in their lives. But, according to him, the increased distance between their domiciles has reduced the number of days Mr. Westlake sees his children to approximately six out of every fourteen days.

In the early winter of 2003, the parties each filed motions for changes in custody and visitation. Because he was upset that his former wife had moved with their children to a distant part of the state, Mr. Westlake sought a change in physical possession of the children. On the other hand, Ms. Westlake sought sole custody. After a series of hearings in the Family Court, the trial justice denied the motions of both parties and ordered physical possession of the two minor children to remain with the mother. An order disposing of all issues in the case was entered in December 2003. The defendant timely appealed to this Court with respect to the placement of the minor children.[2]

 "In this state, the question of the custody of minor children of divorced parties, whether provided for in a final decree or otherwise, continues within the jurisdiction and control of the trial court. However * * * the trial court should not exercise that jurisdiction without a showing that there has been some alteration or change in circumstances and conditions that existed at the time of the entry of the final decree." *Kenney v. Hickey*, 486 A.2d 1079, 1082 (R.I.1985). "Once the record discloses a sufficient change in circumstances to permit a reopening of the decree, then the 'polestar for the trial justice's guidance' is what, in the circumstances of the particular case, is best for the children's welfare." *Id.* In this case, the trial justice articulated and applied this two-part test when evaluating Mr. Westlake's motion for a modification of the placement of the children, and it is undisputed that the first part was satisfactorily met. The trial justice found

1. Final judgment on the divorce, custody, and property settlement agreements was not entered by the court until January 16, 2003.

2. We note that an order was entered on May 12, 2003, on the very issue that defendant father appeals, placement of the children. The notice of appeal was not filed until December 17, 2003. However, another order again addressing placement, as well as visitation and child support, was entered in the trial court on December 12, 2003. Therefore, this appeal is timely, consistent with our holding in *Mattera v. Mattera*, 669 A.2d 538 (R.I. 1996).

"that there has been a substantial change in circumstances. The change of circumstances took place when Ms. [Westlake] moved from Little Compton to Burrillville, Rhode Island. The father obviously had frequent contact with the children at that time. The move, because of the transportation considerations, necessitated a change in his contact, so there is a substantial change in circumstances."

■ As to the second part of the test, the trial justice found that "basically, it is in the best interest of the children, who are doing well in Burrillville, have adjusted to Burrillville, to remain with the mother in Burrillville." On appeal to this Court, Mr. Westlake asserts that the trial justice ignored the standards established by this Court for making a best interests determination, and as such, committed reversible error because his decision was not in the best interests of the children.

■ In an appeal in which a party challenges the trial justice's custody award, our review is limited to whether the trial justice abused his discretion in making the finding at issue. *See Mattera v. Mattera,* 669 A.2d 538, 541 (R.I.1996); *Pettinato v. Pettinato,* 582 A.2d 909, 914 (R.I. 1990). In this case, the trial justice declared that his decision to preserve the mother's physical custody of her children was based on the best interests of those children. "Few principles are more firmly established in the law * * * than that in awarding custody, placement, and visitation rights, the 'paramount consideration' is the best interests of the child." *Dupre v. Dupre,* 857 A.2d 242, 251–52 (R.I.2004) (quoting *Africano v. Castelli,* 837 A.2d 721, 728 (R.I.2003)). "Our Legislature has not statutorily defined the factors that compose 'the best interests of the child' standard. Consequently in this state, the best interests of the child standard remains

amorphous and its implementation has been left to the sound discretion of the trial justices." *Pettinato,* 582 A.2d at 913. In *Pettinato,* this Court established a "nonexclusive list of factors to be considered by the trial justice," *Sammataro v. Sammataro,* 620 A.2d 1253, 1254 (R.I. 1993), though " '[a]ll other considerations are subordinate to the child's intellectual, moral, physical, and spiritual wellbeing.' " *Id.* (quoting *Burrows v. Brady,* 605 A.2d 1312, 1315 (R.I.1992)). Keeping in mind that "the best interests of the child should not be determined by assessing any one factor," the factors to be considered in a best interests determination include:

"1. The wishes of the child's parent or parents regarding the child's custody.

"2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

"3. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings, and any other person who may significantly affect the child's best interest.

"4. The child's adjustment to the child's home, school, and community.

"5. The mental and physical health of all individuals involved.

"6. The stability of the child's home environment.

"7. The moral fitness of the child's parents.

"8. The willingness and ability of each parent to facilitate a close and continuous parent-child relationship between the child and the other parent." *Pettinato,* 582 A.2d at 913–14.

Our careful review of the record reveals that the trial justice weighed the relevant factors set forth by this Court, and we see no abuse of discretion in his findings. Of particular importance was the trial jus-

tice's consideration of and reliance on the guardian ad litem's (GAL) testimony and report. After reporting that the children were "well adjusted," and "socially active," the GAL recommended that the children remain in the physical custody of their mother. Among other things, the GAL took into consideration the children's own wishes, their relationships with their parents, their adjustment to the new living environment, and the amount of time spent with each parent. The trial justice took into consideration the fact that the children were happy in their new surroundings, had adjusted well to the new school system, and had a stable home environment. The trial justice took particular note of Mr. Westlake's admission that his former wife is a good mother, and a "fit and proper parent" to their children. The trial justice determined that the only "downside" to Ms. Westlake's move to Burrillville was a diminution in the time spent between the children and their father.

We see no merit to Mr. Westlake's contentions that the trial justice considered the interests of Ms. Westlake instead of those of her children. We agree with the trial justice's finding that it is in the best interests of the children to remain in the physical custody of their mother. Because we see no abuse of discretion on his part, we affirm the Family Court's denial of Mr. Westlake's motion for modification of custody.

Justice GOLDBERG did not participate.