Jacqueline Ann HINSHAW (now Lenarz), Appellant

v.

Ren Ricky HINSHAW and Sandra G. Ragland, Appellees.

No. 2006–SC–000729–DGE.

Supreme Court of Kentucky.

Nov. 1, 2007.

---

Peter L. Ostermiller, James P. McCrocklin, Louisville, KY, Counsel for Appellant.

Stephen P. Imhoff, Imhoff Law Office, Louisville, KY, Counsel for Appellee, Ren Ricky Hinshaw.

Diana L. Skaggs, Diana L. Skaggs & Associates, Louisville, KY, Counsel for Appellee, Sandra G. Ragland.

Opinion of the Court by Justice CUNNINGHAM.

## I. Introduction

This case involves Jacqueline Ann Hinshaw's appeal of a final judgment of the Jefferson Family Court which awarded Jacqueline and Ren Ricky Hinshaw joint custody of Asher Hinshaw, with Ren desig- nated as the primary residential custodian. The Court of Appeals, in a unanimous decision, agreed with the application of equitable estoppel and affirmed the family court's judgment.

On appeal, Jacqueline's principal argument is that the lower court erred when it failed to resolve Ren's custody rights based on DNA evidence that showed Ren had a 0.00% chance of being the child's biological father. Further, Jacqueline argues equitable estoppel has no application to custody disputes.

This Court holds today that the common law doctrine of equitable estoppel is applicable to custody cases. The principle itself, which is unique in its application, has stringent standards that must be met. Those stringent standards, which are very fact specific, were met in this case. For this reason, we affirm.

## II. Factual Background

Jacqueline and Ren were married on December 29, 1988. The couple's only child, Asher, was born on June 28, 1999. Ren, who was present in the delivery room, cut the umbilical cord. Together, the couple named Asher after Ren's father. Further, Asher's birth certificate lists Ren as the father.

Jacqueline filed for divorce in January of 2003. In her verified petition for dissolution, Jacqueline stated to the court that she and Ren were the parents of one child, Asher. Subsequently, she amended her petition and alleged for the first time that Ren was not the biological father. Jacqueline then sought court-ordered DNA testing to prove her claim.

The results of the DNA test, introduced by avowal, indicated there was a 0.00% chance that Ren was Asher's biological father. Jacqueline than filed another amended petition and sought to deny Ren

custody based on the fact that he was not the biological father.

Over Jacqueline's objections, the court appointed a clinical psychologist, Dr. Edward P. Berla, to serve as a custodial evaluator. After conducting interviews with the parties and the child, Dr. Berla concluded, "Asher has bonded with Respondent [Ren] and it would be very devastating to him if Respondent was not in his life." Further, Dr. Berla concluded that "severing [the relationship between Ren and Asher] would at the very least cause Asher severe emotional and psychological harm."

In an order entered January 28, 2005, the family court noted that, until she made her claim in this action, Jacqueline had always represented, both to Ren and the world, that Ren was Asher's father. In fact, the court found that Ren had neither known nor suspected the fact that he might not be Asher's biological father until Jacqueline made her claim in the present action. Further, Jacqueline had encouraged the development of a strong father-son relationship and admitted Ren had been active in all facets of Asher's life from the beginning.

The family court concluded equitable estoppel precluded Jacqueline from challenging Ren's custody rights based on DNA testing. Thus, the court found the DNA test results were irrelevant as to the issue of custody. Further, the court found Ren was Asher's legal father and that the parties were on equal footing in matters of custody. The court, applying the best interests of the child standard, concluded the parties should share joint custody with Ren designated as the primary residential custodian.

The Court of Appeals, in a unanimous decision affirming the lower court, agreed that equitable estoppel precluded Jacqueline from challenging Ren's right to custody based on the results of the DNA test.[1] In reaching this conclusion, the court rejected Jacqueline's claim that Kentucky law precluded the application of equitable estoppel in custody cases. Further, the Court of Appeals emphasized that this is not a paternity action. Rather, it is a custody action and DNA test results do not resolve this issue. Jacqueline sought discretionary review from portions of this opinion.

## III. Analysis

■ Jacqueline argues the family court erred when it failed to resolve Ren's custody rights based on the results of DNA testing. In making this argument, Jacqueline points to Kentucky Revised Statute (KRS) 406.011 and KRS 406.111. While acknowledging that KRS 406.011 creates a presumption of paternity, Jacqueline correctly argues the presumption is rebuttable. Jacqueline asserts that the results of the DNA test introduced by avowal and showing a 0.00% chance Ren was Asher's biological father, rebutted the presumption and triggered the application of KRS 406.111. Further, Jacqueline argues that equitable estoppel has no application in custody disputes. Alternatively, Jacqueline asserts that if equitable estoppel were applicable, Ren has failed to establish the necessary elements of equitable estoppel. Thus, under KRS 406.111, Jacqueline argues the court was required to resolve paternity against Ren. Jacqueline reasons that, as Ren cannot be Asher's biological

1. The Court of Appeals also affirmed the lower court's decision as it related to attorney's fees. Although Sandra G. Ragland, Ren's attorney before the family court, was named as a party to this appeal, Jacqueline has made no challenge to that portion of the opinion dealing with the attorney's fees.

father, he cannot stand on equal footing with her in a custody dispute.

While Jacqueline's argument may resolve a dispute over paternity, it does not resolve the issue of custody. The question before this Court is whether DNA test results can be introduced to disprove paternity, and thus deny custody. We believe this question is resolved by the application of equitable estoppel to the unique facts of this case.

■ The common law principle of equitable estoppel has long been recognized in Kentucky. *See Electric & Water Plant Bd. v. Suburban Acres Dev., Inc.*, 513 S.W.2d 489 (Ky.1974). In *J. Branham Erecting & Steel Serv. Co., Inc. v. Kentucky Unemployment Insur. Comm'n*, the court stated a party asserting equitable estoppel must show the following elements:

> (1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied on this conduct to his detriment.

880 S.W.2d 896, 898 (Ky.App.1994), *quoting Gray v. Jackson Prod. Credit Assoc.*, 691 S.W.2d 904, 906 (Ky.App.1985). An essential element of estoppel "is that the adverse party must have relied upon the conduct or representation of the other and thereby been prejudiced or induced to change his position for the worse[.]" *Embry v. Long*, 256 Ky. 266, 75 S.W.2d 1036, 1038 (1934). *See also Acree v. E.I.F.C.*

*Inc.*, 502 S.W.2d 43 (Ky.1973); *Caudel v. Prewitt*, 296 Ky. 848, 178 S.W.2d 22 (1944).

Contrary to Jacqueline's argument, the stringent standards or elements of equitable estoppel have all been met. Jacqueline's acts, language, and silence were aimed at misleading Ren into believing he was Asher's biological father. Through her acts, language and silence, Jacqueline intended for Ren and Asher to develop a strong father-son relationship. Jacqueline makes no attempt to deny the fact that she was aware of the true facts.

Also, Jacqueline makes no attempt to challenge the existence of the elements set forth above. Rather, Jacqueline argues Ren failed to show reliance and conduct to his detriment. To support her position, Jacqueline notes that Ren testified he would not have done anything differently in his relationship with Asher had he known the truth.

We believe Jacqueline's argument misses the point. Saying Ren would have continued his relationship with, and support for, Asher had he known the truth is not the same as saying he would have taken no action. Jacqueline's actions withheld the true state of affairs from Ren. In so doing, Jacqueline denied Ren the opportunity of seeking legal advice as to the true nature of his relationship with Asher and his rights and obligations in relation to Jacqueline and the biological father.[2] Stated another way, Jacqueline's acts, language, and silence ensured that Ren would take no action. Under these circumstances, we conclude it was not an abuse of discretion for the family court to find Ren relied on Jacqueline's conduct to his detriment.

**2.** As noted by the Court of Appeals, Ren, in ensuring his father-son relationship with Asher, "might have sought to have Jacqueline institute legal action to terminate the biological father's parental rights so that he could adopt the child. As an adoptive parent, Ren would have been on equal footing with Jacqueline in a custody dispute."

■ Our conclusion that equitable estoppel applies to custody actions has been followed in other jurisdictions. While Ren has cited to several cases that have applied equitable estoppel to custody disputes, we find *Pettinato v. Pettinato,* 582 A.2d 909 (R.I.1990), particularly persuasive. The factual circumstances in *Pettinato* are on point with those present in the case *sub judice.* In *Pettinato,* the husband and wife continued to engage in sexual relations with one another during the time period in which the wife conceived a child by another man. The husband was named as the father on the child's birth certificate, the wife encouraged the development of a relationship between the child and the husband, the husband first became aware of the paternity issue when it was raised in a divorce proceeding, and the wife contended that the husband should be denied any consideration as to custody based on the results of DNA testing. *Id.* at 911–12. The court in *Pettinato* stated, "The underlying rationale of the equitable-estoppel doctrine is that 'under certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as father of the child.'" *Id.* at 912–13, *quoting John M. v. Paula T.,* 524 Pa. 306, 571 A.2d 1380, 1386 (Pa.1990).

Further, the court in that case concluded that where equitable estoppel applies, the "evidence of genetic blood tests is considered irrelevant in a divorce proceeding wherein the basic issue is the termination of the marriage bond—not the paternity of a child." *Id.* at 913. Finally, the court in *Pettinato* concluded that "[t]he law will not permit a person in these situations to challenge the status which he or she has previously accepted [or created]." (Citations omitted.) *Id.* We find this reasoning to be sound and adopt it in this case.

Further, our application of equitable estoppel to custody matters is not the first application by a court in Kentucky. The Court of Appeals applied the common law principle of equitable estoppel in *S.R.D. v. T.L.B.,* 174 S.W.3d 502 (Ky.App.2005). In *S.R.D.,* an ex-husband was found to be equitably estopped from raising paternity as a means to disclaim financial responsibility for a child born during his previous marriage. While the youngest of the three children was born during the marriage, the wife made it known during the marriage that the husband was not the father. *Id.* at 503. When the husband filed for divorce, he stated all three children were born of the marriage. *Id.* Further, the husband agreed to support all three children as part of the divorce. *Id.* Over six years later, the ex-husband had the children undergo DNA testing. When the results showed he was not the biological father of the third child, he moved to set aside the parentage finding and support obligation as to the youngest of the three children. *Id.* In concluding equitable estoppel barred the ex-husband's claim, the Court of Appeals recognized that "the relationship of father and child is too sacred to be thrown off like an old cloak, used and unwanted." *Id.* at 510.

The reasoning in *S.R.D.* is equally applicable in this case. Jacqueline, having encouraged and used the father-son relationship between Ren and Asher, cannot now simply throw it off "like an old cloak, used and unwanted." Under these unique circumstances, equitable estoppel precludes Jacqueline from challenging Ren's status as Asher's father, a status she created and accepted.

## IV. Conclusion

This Court concludes that the common law principle of equitable estoppel, long accepted in Kentucky, is applicable to cus-

tody cases. The stringent standards or elements that must be met for the principle to apply are present in this case. For this reason, we agree with the Jefferson Family Court and the Court of Appeals in their application of equitable estoppel to preclude Jacqueline from challenging Ren's right to custody based on the DNA test results. Thus, we affirm the Court Appeals.

All sitting. All concur.