**Neil F. KEENAN**

v.

**L. Caroline SOMBERG.**

**No. 00–203–APPEAL.**

Supreme Court of Rhode Island.

March 11, 2002.

Marty C. Marran, Cranston, Joseph DeStefano, Newport, Neil F. Keenan, for Plaintiff.

William J. Lynch, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court for oral argument on January 28, 2002, pursuant to an order directing the parties to appear and show cause why the issues raised in the appeal should not be summarily decided. After hearing the arguments of counsel, and considering the memoranda of the parties, we conclude that cause has not been shown. Accordingly, we shall decide the appeal at this time.

■ The plaintiff, Neil F. Keenan (plaintiff or Keenan), appeals from a Family Court order denying his petition for visitation or, in the alternative, visitation and joint custody of Tyler Somberg (Tyler), the son of the defendant, L. Caroline Somberg (Somberg or defendant), who was born on September 22, 1993. Keenan argued that in denying him custody and visitation rights, the trial justice overlooked material evidence and was clearly wrong. Somberg maintained that because Keenan is not related to the child by blood or marriage, the Family Court lacked subject matter jurisdiction to hear Keenan's motion and that plaintiff had no legal standing to bring this action.

Keenan initially sought visitation with Tyler based upon his belief that he was the child's biological father. A justice of the Family Court awarded him interim visitation pending a determination of paternity. Subsequently, DNA testing conclusively determined that Keenan was not Tyler's biological father and plaintiff thereafter

sought visitation or custody with Tyler based upon theories of equitable estoppel and equitable parenthood. Specifically, plaintiff alleged that he always believed he was Tyler's father, he visited him often and provided cash support to Somberg to such a degree that his relationship with Tyler rose to the level of *de facto* fatherhood. In *Rubano v. DiCenzo*, 759 A.2d 959 (R.I.2000), this Court was confronted with the question of whether the Family Court was vested with jurisdiction to entertain Rubano's petition seeking visitation with a child who was born during Rubano's relationship with her same-sex partner and biological parent of the child, after the relationship had terminated. This Court relied on G.L.1956 § 15–8–26[1] of the Uniform Law on Paternity (ULP) and concluded that the Family Court was vested with jurisdiction to determine whether Rubano was an "interested party" under the ULP, concluding that Rubano and the child had a *de facto* mother and child relationship, including the indicia of parenthood, and further, we concluded that the biological mother had agreed to permit permanent and reasonable visitation with the child. *Rubano*, 759 A.2d at 967. Although *Rubano* supports a finding of Family Court jurisdiction, it is of little assistance to the plaintiff's claim of equitable parenthood. Unlike the facts in *Rubano*, Keenan and Somberg never reached an agreement that Keenan would be a parent to Tyler, nor did Somberg hold Keenan out to be Tyler's father. Additionally, Keenan never resided with Somberg and Tyler and presented no evidence establishing any indicia of parenthood. Finally, Keenan failed to establish that Somberg attempted to foster a parental relationship between Keenan and Tyler. In short, there was no

*de facto* parenthood established in this case that would be of assistance to plaintiff's claim.

Moreover, custody and visitation decisions are grounded, as always, on a determination of the best interests of the child. Although there are no specific factors necessary to establish that visitation or custody is in the best interests of a particular child, several considerations are relevant to this analysis, including:

"1. The wishes of the child's parent or parents * * *. 2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference. 3. The interaction and interrelationship [between] the child [and their] parent or parents * * *. 4. The child's adjustment to the child's home, school, and community. 5. The mental and physical health of all individuals involved. 6. The stability of the child's home environment. 7. The moral fitness of the child's parents. 8. The willingness and ability of each parent to facilitate a close * * * relationship between [the parent and child]." *Pettinato v. Pettinato*, 582 A.2d 909, 913–14 (R.I.1990).

In this case, the trial justice concluded that it was in Tyler's best interests to deny visitation to Keenan. The determination of the best interests of the child rests within the sound discretion of the trial justice based on all the facts presented and will not be disturbed on appeal absent an abuse of that discretion. *Logan v. Logan*, 763 A.2d 587, 589 (R.I.2000); *Kettelle v. Kettelle*, 707 A.2d 268, 269 (R.I. 1998). Here, we are satisfied that in

---

1. General Laws 1956 § 15–8–26 provides: "Any interested party may bring an action to determine the existence or nonexistence of a mother and child relationship. Insofar as

practicable, the provisions of this chapter which are applicable to the father and child relationship shall apply."

reaching this determination, the trial justice neither abused her discretion nor was she otherwise clearly wrong.

■ Finally, an important presumption exists that fit parents act in the best interests of their children.[2] Thus, the findings of the trial justice, when viewed in conjunction with the presumption that Somberg acted at all times in Tyler's best interest, leads us to conclude that the denial of visitation was correct and should be upheld. Accordingly, the plaintiff's appeal is denied and dismissed. The order of the Family Court is affirmed and the papers in the case are remanded to the Family Court.

---

2. "The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity * * * [and] that natural bonds of affection lead parents to act in the best interests of their children." *Troxel v. Granville*, 530 U.S. 57, 68, 120 S.Ct. 2054, 2061, 147 L.Ed.2d 49, 58 (2000) (quoting *Parham v. J.R.*, 442 U.S. 584, 602, 99 S.Ct. 2493, 2504, 61 L.Ed.2d 101, 118 (1979)).