**Elizabeth A. ANDREOZZI**

v.

**David A. ANDREOZZI.**

**No. 2001–185–Appeal.**

Supreme Court of Rhode Island.

Jan. 14, 2003.

Robert S. Parker, Providence, Maureen Gemma, for Plaintiff.

Lauren E. Jones, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendant, David A. Andreozzi (David), appeals from a Family Court decree concerning child support, child custody, equitable distribution of marital assets and the Family Court general magistrate's (magistrate) denial of David's motion for a new trial. He contends that the magistrate clearly was wrong in determining the child support and child custody and that the magistrate abused his discretion in calculating the equitable distribution. This case came before the Supreme Court for oral argument on November 4, 2002, following an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. Having reviewed the record and the parties' briefs, and having considered the oral arguments, we are of the opinion that cause has not been shown and proceed to decide the appeal at this time. For the reasons indicated below, we affirm the decree of the magistrate.

David and plaintiff, Elizabeth A. Andreozzi (Elizabeth), were married on October 18, 1986, in Somerset, Massachusetts. Elizabeth gave birth to twins in 1990. In May 1992, Elizabeth filed for divorce, but the couple reconciled and had another child in 1994. In 1994 or 1995, David began receiving Social Security disability benefits for a degenerative joint disease that left him totally disabled.[1] About one year before being adjudged disabled, David stopped working because the con-

---

1. David testified that he was not sure of the exact year that he began receiving benefits and there is no other indication of precisely when he began collecting Social Security benefits.

struction company he worked for went into receivership. Elizabeth continued to work, making between $40,000 and $80,000 per year to support the family.

David was a member of the Barrington Town Council (town council) and was very involved in local politics, which, with caring for the children, his archeology hobby and performing light construction work, occupied much of his time. Both Elizabeth and her sister testified that David often would have other people care for the children while he pursued his political and archeological interests. Elizabeth also testified that although David did do a significant amount of part-time work, she never received any of that income and David never contributed to the household expenses. Elizabeth again filed for divorce in August 1999 after David was arrested for and convicted of simple assault against her. *See State v. Andreozzi*, 798 A.2d 372 (R.I. 2002).

The magistrate granted the divorce and also awarded Elizabeth 75 percent of the marital assets, sole custody of the children and child support. In determining the child support amount, the magistrate added David's monthly incomes: the $850 pension, plus $700 in potential income that the magistrate determined David was capable of earning, plus the $423 that Social Security provides for the children, totaling $1,973 per month. Using that figure, the magistrate determined the amount of child support based on the Family Court child support guidelines. Based on those guidelines, the magistrate ordered $68 per week for child support in addition to the $423 that he had to pay for dependency benefits.

The magistrate also found that David was not currently fit for joint custody. However, he advised David that he could apply again for joint custody after receiving psychiatric care.

Included in Elizabeth's 75 percent equitable distribution of the marital assets were the marital home, Elizabeth's stock savings plan and one of two functioning automobiles. The magistrate based this distribution on evidence that David contributed little financially to the household after becoming disabled, although he continued to work. Furthermore, he failed to provide consistent care for the children, he was indifferent toward his family and abusive toward his wife.

After the magistrate made his decision, David filed a motion for a new trial. On December 4, 2000, the magistrate denied his motion. David filed a timely appeal.

# I

## Child Support

■ Child support awards are governed by G.L.1956 § 15–5–16.2, which requires all awards to be based on established formulas and guidelines of the Family Court with discretion for deviance from the guidelines when equity requires. *See* § 15–5–16.2(a); *Lembo v. Lembo*, 624 A.2d 1089, 1091 (R.I.1993).

"The guidelines encourage a Family Court justice to exercise broad discretion 'in cases where [its] application would be inequitable for either of the parties or to the child.' * * * 'It is well established that the appropriate award of child support is to be determined by the trial justice in his or her sound discretion, and we shall not disturb such a determination on review absent a clear abuse of that discretion.'" *Koziol v. Koziol*, 720 A.2d 230, 233 (R.I.1998) (quoting *Mattera v. Mattera*, 669 A.2d 538, 542 (R.I.1996)).

The magistrate based the child support award on the Family Court's guidelines and did not find the amount to be unfair.

Therefore, we will not disturb his finding and award absent an abuse of discretion.

David argues that the magistrate erred in ordering child support based on "phantom" income. Specifically, David takes issue with the magistrate's finding that David could potentially earn an additional $700 per month. According to David's testimony, government guidelines allow Social Security disability benefit recipients to earn an additional $10,080 per year without jeopardizing their benefits. Based on that information and the evidence of David's continued self-employment, the magistrate found that David "can earn additional sums without penalty to his benefits and should seek rehabilitation or employment to secure the maximum for himself and his family." David now contends that the magistrate overlooked or misconceived the evidence or was clearly wrong in determining that he should seek employment. We disagree.

The evidence indicates that, although David was suffering from arthritis for which he received total disability benefits, he continued to perform light construction work fifteen to twenty hours per week at a rate of $10 to $12 per hour. Furthermore, the hours he spent participating in local government[2] or collecting artifacts could be spent earning income. Therefore, there is sufficient evidence to support the magistrate's finding that David was able to earn an additional $700 per month.

Additionally, the magistrate did not require David to seek employment that would cause his earnings to exceed the maximum amount allowed under the Social Security guidelines. Instead, he determined $700 per month to be a fair estimate of David's earning potential based on the evidence of David's work schedule and earnings between the years 1994 and 1997

and other activities. To earn $700 per month, David must work approximately fifteen hours per week at $12 per hour. Those numbers are very similar to the evidence of David's previous work routines. Therefore, we hold that the magistrate did not abuse his discretion in determining David's ability to work and his child support obligation based on his potential additional income.

## II

### Equitable Distribution

"[T]he equitable distribution of marital assets is left to the sound discretion of the [Family Court justice who] is obligated to consider the factors prescribed by the Legislature in G.L.1956 § 15–5–16.1." *Viti v. Viti*, 773 A.2d 893, 895 (R.I.2001) (quoting *Murphy v. Murphy*, 714 A.2d 576, 579 (R.I.1998)). The magistrate considered all the statutory factors for equitable distribution set out in § 15–5–16.1. Specifically, he looked at: the length of the marriage, the conduct of the parties, the contribution of the parties, the services of either as homemaker, the health and age of the parties, the amount and source of the parties' income, the occupation and employability of the parties, the opportunity for acquisition of future assets and income, the contributions by either to education and training, the need of the custodial parent to occupy the marital residence and the wasteful dissipation, transfer or encumbrance of assets. *See* § 15–5–16.1. David asserts that the evidence does not support the magistrate's finding that he was 75 percent responsible for the breakdown of the marriage. We disagree.

After reviewing the evidence in the context of those factors, the magistrate found

---

**2.** In addition to attending regular town council meetings, David would walk more than two miles with the town council at the annual Barrington Memorial Day Parade.

that David was too critical of Elizabeth, spent money on archeological artifacts that the couple could not afford, and immersed himself in his archeology hobby and politics "to the detriment of his family." He also found that David contributed little to the appreciation of the couple's assets after 1991 [in comparison to] Elizabeth's contributions. As for his services as homemaker, the magistrate determined that, although David did serve as homemaker, he often passed the babysitting responsibilities off to another "so that he could pursue his interests." As a result, the magistrate found David to be 75 percent at fault for equitable distribution purposes.

David primarily takes issue with the weight the magistrate placed on certain testimony at the hearing. He contends that the magistrate erred because he did not provide a reason for discrediting David's testimony. David cites *Laganiere v. Bonte Spinning Co.*, 103 R.I. 191, 194–95, 236 A.2d 256, 258 (1967), to support his contention that the magistrate must give a reason for not believing a witness. However, his reliance on *Laganiere* is misplaced. In *Laganiere*, this Court found that the trial justice erred in rejecting the sole witness's uncontroverted testimony that she made a bona fide effort to obtain employment without furnishing an explanation for not finding her credible. *Id.* Unlike the trial justice in *Laganiere*, the magistrate in this case was not dealing with only one witness or uncontroverted testimony; David, Elizabeth and Elizabeth's sister testified about the conduct, contributions and fault of the parties.

■ The magistrate's decision illustrates that he found Elizabeth's testimony more credible than David's. Because David's testimony was contested, the magistrate need not give any reason why he found Elizabeth more credible. *See, e.g.,*

*Norton v. Courtemanche,* 798 A.2d 925, 932 (R.I.2002). Furthermore, this Court will not disturb determinations of credibility in a non jury trial unless the findings are clearly wrong or the magistrate misconceived or overlooked material evidence. *See Environmental Scientific Corp. v. Durfee,* 621 A.2d 200, 206 (R.I.1993). The magistrate did not act improperly in determining credibility nor did he abuse his discretion in awarding the distribution.

### III

### Custody

■ Custody decisions are always grounded in the best interests of the child. *See Keenan v. Somberg,* 792 A.2d 47, 49 (R.I.2002). "The determination of the best interests of the child rests within the sound discretion of the trial justice based on all the facts presented and will not be disturbed on appeal absent an abuse of that discretion." *Id.* (citing *Logan v. Logan,* 763 A.2d 587, 589 (R.I.2000); *Kettelle v. Kettelle,* 707 A.2d 268, 269 (R.I.1998)).

David asserts that the magistrate erred in finding that he was unfit for joint custody. He further contends that the magistrate's failure to mention *Pettinato v. Pettinato,* 582 A.2d 909 (R.I.1990) (laying out factors that may be used to determine the best interests of the child) in his decision constituted error. We disagree.

The magistrate awarded sole custody of the couple's three children to Elizabeth. In making this decision he said:

"The [c]ourt is unable to find the [d]efendant fit and proper based upon the testimony presented. It seems evident that psychiatric help is in order for the [d]efendant to set his priorities straight and to be able to co-parent these children. Upon completion of psychiatric counseling, application can be made to

the [c]ourt to consider a joint custody award."

The magistrate based his findings on evidence that David abused prescription drugs in the past, was more interested in himself, politics and archeological artifacts than his family, had mental health issues requiring medication and was convicted of simple assault against Elizabeth. Furthermore, the magistrate considered the guardian ad litem's testimony and report regarding David's lack of interest in setting up meetings with her so she could observe his interaction with the children. Her report and testimony also pointed out David's inability to remain focused on the children during their conversations.

■ Although custody decisions are grounded in the best interests of the child, a magistrate or trial justice is not required to consider specific factors to establish the best interests of a child. *See Keenan,* 792 A.2d at 49. Therefore, the magistrate was not required to refer to the *Pettinato* factors[3] in making his determination. Regardless, although the magistrate did not specifically refer to the *Pettinato* factors, he did address some of them indirectly. In his decision, the magistrate commented on evidence heard and received on the preference of the children and the interrelationship between the children and parents as indicated in the guardian ad litem report. Moreover, he also stated that keeping the children in their home and community environment was in the best interests of the children.

Based on the evidence, there is ample support for the magistrate's award of sole custody to Elizabeth. The evidence demonstrates that David's mental health was questionable. Furthermore, there was a documented history of David's previous mental health conditions that required medication. Consequently, the evidence supports the magistrate's decision to condition David's ability to apply for joint custody upon receiving psychiatric care. Therefore, the magistrate's decision was not erroneous.

## IV

### New Trial Motion

In civil proceedings, we have established that "the trial justice acts as a 'superjuror' in considering a motion for a new trial. * * * Therefore, if the trial justice: 'reviews the evidence, comments on the weight of the evidence and the credibility of the witnesses, and exercises his * * * independent judgment, his * * * determination either granting or denying a motion for new trial will not be disturbed unless he * * * has overlooked or misconceived material and relevant evidence or was otherwise clearly wrong.'" *Rezendes v. Beaudette,* 797 A.2d 474, 477–78 (R.I.2002) (quoting *English v. Green,* 787 A.2d 1146, 1149 (R.I.2001)). David argues that the magistrate's denial of his motion for a new trial was erroneous. We disagree.

The magistrate reviewed all the relevant evidence, and for all of the reasons set

---

3. The factors include:
"1. The wishes of the child's parent or parents * * *. 2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference. 3. The interaction and interrelationship [between] the child [and their] parent or parents * * *. 4. The child's adjustment to the child's home, school, and communi-
ty. 5. The mental and physical health of all individuals involved. 6. The stability of the child's home environment. 7. The moral fitness of the child's parents. 8. The willingness and ability of each parent to facilitate a close * * * relationship between [the parent and child]." *Keenan v. Somberg,* 792 A.2d 47, 49 (R.I.2002) (quoting *Pettinato v. Pettinato,* 582 A.2d 909, 913–14 (R.I.1990)).

forth above, the evidence supports the magistrate's finding and we affirm his denial of David's motion for a new trial.

### Conclusion

Accordingly, David's appeal is denied and dismissed and the decree of the Family Court is affirmed. The papers in the case may be returned to the Family Court.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.