**Louisa RESENDES et al.**

v.

**Nicole BROWN.**

No. 2007–316–Appeal.

Supreme Court of Rhode Island.

March 24, 2009.

Steven A. Robinson, Esq., Cranston, for Plaintiff.

Denise Aiken, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

The plaintiffs, Louisa Resendes (Resendes) and Charles Smith (Smith) (collectively plaintiffs), claim visitation rights with Cameron Brown (Cameron), the minor son of the defendant, Nicole Brown (Brown or defendant); they are before the Supreme Court on appeal from a Family Court order that vacated a stipulation entered into by the parties and dismissed the complaint. A justice of the Family Court vacated the stipulation and dismissed the case based on a finding that the child's unidentified biological father was not afforded notice of the proceeding. We deem this error and vacate the order of the Family Court. This case shall be remanded to the Family Court with directions to reinstate the stipulation and conduct a hearing on the motion for visitation to be determined in accordance with Cameron's best interests.

### Facts and Travel

The travel of this case commenced on September 8, 2004, when plaintiffs filed a miscellaneous complaint in the Family Court seeking guardianship of Cameron, who was born on May 16, 2000. The plaintiffs alleged that they had maintained physical possession of Cameron since September 2000 and were his de facto parents. They also alleged that Brown visited the child infrequently and did not contribute to his support, despite receiving public assistance benefits on his behalf. Additionally, plaintiffs alleged that Brown was "not a fit and proper person to have physical possession and custody of [Cameron]." The plaintiffs sought the assistance of the Family Court because defendant informed them that she intended to relocate to Alabama with Cameron. On November 18, 2004, plaintiffs amended their complaint and, in addition to seeking guardianship, sought custody or visitation with the child. In her answer, defendant denied that she was an unfit parent and also denied the allegations that plaintiffs had physical custody of Cameron for four years.

On January 18, 2005, the parties, who were represented by counsel at the time, entered into the following stipulation that was approved by the Family Court:

"1) [Plaintiffs] shall be adjudged as de facto parents of Cameron Brown;

"2) [Plaintiffs] shall be able to obtain Cameron's educational and medical records;

"3) [Defendant] Nicole Brown shall have custody of Cameron, with plaintiffs having all reasonable rights of [visitation], to be agreed upon by the parties;

"4) [Rhode Island] shall remain the home state;

"5) Nicole Brown shall remain in [Rhode Island] through March 31, 2005; thereafter, she shall be able to relocate to Alabama, or elsewhere;

"6) After Nicole Brown relocates, she shall provide plaintiffs with her residential address and phone number;

"7) Plaintiffs shall be able to have regular telephone communication [with] Cameron[;]

"8) After Nicole Brown relocates, plaintiffs shall be able to have vacation visitation [with] Cameron, including [some time] for the summer vacation; and to the extent possible, during the minor child's school vacation. Plaintiffs shall pay Cameron's transportation expenses[;]

"9) Attorney David Colantonio is allowed to withdraw as defendant's attorney."

On February 17, 2006, defendant filed a motion to vacate the stipulation and to suspend visitation between Cameron and plaintiffs. The defendant averred that she was in a state-sponsored witness protection program and that plaintiffs' attempts to have contact with Cameron endangered her family.[1] Visitation was suspended by the Family Court on an emergency basis,

and plaintiffs subsequently filed a motion to reinstate visitation.

█ Inexplicably, for more than one year, there was no action in the Family Court with respect to these motions. On April 26, 2007, a justice of the Family Court considered defendant's motion to vacate the stipulation and plaintiffs' motion to reinstate visitation with Cameron. Although the trial justice recognized that the identity of Cameron's biological father was in dispute and that the question of his identity was not before him, he declared that the stipulation was "void and of no effect" because the biological father had not been provided with notice of the proceeding and, without such notice, the case could not proceed. The trial justice likened the case to an action to terminate the putative father's parental rights; he dismissed the case on the basis that the biological father was not before the Family Court. After an order vacating the stipulation and dismissing the case was entered, plaintiffs filed this appeal.

Before this Court, plaintiffs argue that in the absence of fraud or mutual mistake or a finding that the parties did not actually consent to the stipulation, the trial justice should not have vacated the stipulation and dismissed the case. Furthermore, plaintiffs argue that the agreement was not void as a matter of law because the stipulation would have no effect on the parental rights of the biological father and the fact that this unidentified individual did not receive notice of the proceeding was not a violation of his due-process rights. Finally, plaintiffs contend that the trial justice erred when he *sua sponte* dismissed the case, without affording the parties an opportunity to be heard or to

---

1. Specifically, defendant alleged that she had been shot and was in the state's witness protection program pending criminal proceedings in which defendant would be a witness for the state. The defendant alleged that Resendes's efforts to locate defendant endangered defendant and the minor children living with her.

allow plaintiffs to attempt to join the biological father.

 The defendant responds that the hearing justice properly vacated the stipulation and dismissed the case based on the absence of notice to the unidentified father. The defendant also argues that a de facto parent-child relationship—a relationship to which the parties stipulated—should be limited to the narrow circumstances described in *Rubano v. DiCenzo,* 759 A.2d 959 (R.I.2000), in which the plaintiff had been in a committed relationship with the biological mother. However, because defendant failed to raise this latter argument to the trial justice, it is not properly before this Court. "[A]s we have stated many times, this Court's 'raise-or-waive' rule precludes our consideration of an issue that has not been raised and articulated at trial." *State v. Bido,* 941 A.2d 822, 828 (R.I.2008). "It is well settled that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." *Id.* at 828–29 (citing *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.,* 640 A.2d 950, 959 (R.I.1994)). We pause to note, however, that an agreement creating a de facto parent-child relationship is a factual matter for the Family Court in the first instance and should be recognized in limited circumstances, based on a finding of "a parent-like relationship with the child that could be substantial enough to warrant legal recognition of certain parental rights and responsibilities" respecting the child. *Rubano,* 759 A.2d at 975.

## Jurisdiction of the Family Court

 After a careful review of this case, we hold that it was error for the trial justice *sua sponte* to dismiss the case simply because the unidentified biological father was not before the Family Court. The trial justice erred when he analogized

the issues before him to a proceeding involving the termination of parental rights, and pointed to the due-process standards that inure in such a proceeding. Rhode Island's law is clear that a biological parent—whether identified or unidentified—has specific and important due-process protections in an action that could terminate his or her parental rights. *See, e.g.,* G.L. 1956 § 15–7–7(a) (requiring notice to the parent when a governmental child placement agency seeks to terminate "any and all legal rights of the parent to the child"); § 15–7–9 (requiring notice to unknown parents by publication when a petition to adopt or to terminate parental rights is filed). However, as the trial justice noted, the only matters before the court were a motion to reinstate visitation and a motion to vacate the stipulation. Because the disposition of these motions would not terminate the rights of either of Cameron's parents, the due-process protections required for a proceeding to terminate parental rights did not apply.

 This Court has held that "[a]t a minimum, due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Flynn v. Al–Amir,* 811 A.2d 1146, 1151 (R.I.2002) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). We recognized in *Rubano* that a party who seeks visitation with a child must "overcome the otherwise applicable presumption in favor of honoring a fit custodial parent's determination not to allow such visitation[.]" *Rubano,* 759 A.2d at 968 (citing *Troxel v. Granville,* 530 U.S. 57, 70, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). In this case, the interested parties were plaintiffs, who sought visitation with Cameron, and defendant, who is the

child's custodial parent. All of these parties were aware that the action was pending and each had an opportunity to present his or her contentions in an appropriately noticed proceeding. Accordingly, we are satisfied that due process was afforded to the interested parties and that the trial justice erroneously dismissed the case based on his finding that the unidentified biological father was not before the court.

■ The United States Supreme Court has held that "[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood * * *, his interest in personal contact with his child acquires substantial protection under the Due Process Clause." *Lehr v. Robertson*, 463 U.S. 248, 261, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). However, "the mere existence of a biological link does not merit equivalent constitutional protection." *Id.* In the present case, there is no evidence establishing a biological link between Cameron and either of the men mentioned by the parties as possible fathers.[2] Nor is there any evidence before us that either man has assumed any parental responsibilities for the child. It is not the function of the Family Court or this Court to provide due-process protections to an unidentified and absent biological father in an action that does not terminate his parental rights. Because the Family Court was vested with jurisdiction to hear the case and it was appropriate to exercise that jurisdiction, the trial justice should have reached the merits of the controversy.

### Stipulation

■ Additionally, plaintiffs argue, and we agree, that the parties are bound by the stipulation they entered into on January 18, 2005. This Court previously has held that "[a] stipulation entered into with the assent of counsel and their clients, relative to an evidentiary fact or an element of a claim, is conclusive upon the parties and removes the issue from the controversy." *In re McBurney Law Services, Inc.*, 798 A.2d 877, 881–82 (R.I.2002). "Therefore, absent an agreement of the parties to do so, a stipulation has the attributes of a consent order or consent judgment and cannot be set aside simply because a litigant no longer wants to be bound by its terms." *Id.* at 882. "An order consented to by the parties can not be 'opened, changed or set aside without the assent of the parties in the absence of fraud, mutual mistake or actual absence of consent[.]'" *Id.* (quoting *Douglas Construction and Supply Corp. v. Wholesale Center of North Main Street, Inc.*, 119 R.I. 449, 452, 379 A.2d 917, 918 (1977)).

■ In the present case, the parties, with the assistance of counsel, agreed to the terms contained in the stipulation and are bound by that agreement. The defendant failed to present any evidence to show that the stipulation should be opened, amended, or set aside, but rather argued that "substantial changes in circumstances since the entry of the * * * [s]tipulation" warranted that it be vacated. Specifically, defendant alleged that she was admitted to a state-sponsored witness protection program and that contact with plaintiffs jeopardized her family's safety. Although defendant's arguments are important, they do not suggest that the stipulation resulted from fraud, mutual mistake, or an absence of consent. Although the court properly may consider evidence relating to those allegations when determining the best interests of the child, standing alone they do

---

**2.** In his decision, the trial justice noted that plaintiffs allege that Smith's nephew is Cameron's biological father, while defendant says that the biological father is another man named Cameron Lewis.

not support an order vacating the stipulation that plaintiffs shall have "all reasonable rights of [visitation], to be agreed upon by the parties."

 We hold that it was error for the trial justice to find that the stipulation was void *ab initio* because the unidentified biological father did not have notice of the pending action. Like a contract, the stipulation will only bind the parties who signed it. Therefore, if the child's biological father is identified and asserts his parental rights to Cameron, who is now eight years old, he will not be bound by the stipulation.

## Visitation

 This Court has recognized that in limited situations, "consistent with the statutory law of domestic relations in this jurisdiction, a person who has no biological connection to a child but who has served as a psychological or de facto parent to that child may * * * establish his or her entitlement to parental rights vis-à-vis the child." *Rubano*, 759 A.2d at 975. Determining whether a party is a de facto parent is "a factual matter for the Family Court to decide." *Id.* at 967. However, by stipulating to the fact that plaintiffs were de facto parents of Cameron, the parties removed that issue from the controversy, and therefore, the Family Court must proceed with plaintiffs as Cameron's de facto parents.

 Of course, plaintiffs' status as Cameron's de facto parents, standing alone, is an insufficient basis for granting plaintiffs' request for visitation; "[t]he paramount consideration in cases involving visitation rights or custody disputes is the best interests of the child." *Africano v. Castelli*, 837 A.2d 721, 727–28 (R.I.2003) (quoting *Pacheco v. Bedford*, 787 A.2d 1210, 1213 (R.I.2002)). Before the Family Court may grant or deny plaintiffs' motion for visitation, a trial justice must determine whether it would be in Cameron's best interests.[3] *See Keenan v. Somberg*, 792 A.2d 47, 49 (R.I.2002).

 It is impossible to determine Cameron's best interests from the record before us. This case has proceeded in a seemingly endless cycle of conferences followed by continuances and delays, causing the trial justice to characterize the travel of this case as "conferences, conferences, conferences, conferences[,] but no actual hearing of testimony." Although the trial justice was satisfied that there was a valid reason for this, we are not convinced. The Family Court is a court of record, G.L. 1956 § 8–10–3(b), and the business of the court should not ordinarily be conducted by chamber conferences because this practice results in an "absence of evidence and fact-finding" and "represents a failure by the Family Court to comply with its jurisprudential obligations in adversarial proceedings." *In re Stephanie B.*, 826 A.2d 985, 991 (R.I.2003). "Although we recog-

---

**3.** This Court previously has delineated several considerations that are relevant in determining whether visitation or custody would be in the best interests of a child:

"1. The wishes of the child's parent or parents * * *. 2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference. 3. The interaction and interrelationship [between] the child [and his or her] parent or parents * * *. 4. The child's

adjustment to the child's home, school, and community. 5. The mental and physical health of all individuals involved. 6. The stability of the child's home environment. 7. The moral fitness of the child's parents. 8. The willingness and ability of each parent to facilitate a close * * * relationship between [the parent and child]." *Keenan v. Somberg*, 792 A.2d 47, 49 (R.I.2002) (quoting *Pettinato v. Pettinato*, 582 A.2d 909, 913–14 (R.I.1990)).

nize that the volume of cases that come before this tribunal may dictate frequent chambers conferences, such *in camera* proceedings may not serve to supplant the adversarial process." *Id.* We have said it before and we say it again: "This practice must stop." *Id.*

## Conclusion

For the reasons set forth in this opinion, we vacate the order in this case. The record shall be remanded to the Family Court with directions to reinstate the stipulation of the parties and to conduct a hearing to determine the best interests of the child with respect to the plaintiffs' request for visitation.