March 10, 2026

**Supreme Court**

No. 2023-353-Appeal.
(WM 23-54)

Nicholas DiBiccari                    :

v.                    :

State of Rhode Island et al.                    :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email:    opinionanalyst@courts.ri.gov,    of    any typographical  or  other  formal  errors  in  order  that corrections may be made before the opinion is published.

Nicholas DiBiccari       :

v.                :

State of Rhode Island et al.      :

Present:  Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.**  Nicholas DiBiccari (plaintiff or Mr. DiBiccari) appeals from a Superior Court judgment in favor of the defendants, the State of Rhode Island, James A. Diossa, in his capacity as Treasurer of the State of Rhode Island, and Terrence Gray, in his capacity as Director of the Department of Environmental Management (DEM) (collectively, defendants or the state) following the dismissal of the plaintiff's three-count complaint.  Mr. DiBiccari sought declaratory, injunctive, and monetary relief on the basis that DEM's onsite wastewater treatment system (OWTS) regulations were unconstitutional as applied to him, and asserted facial constitutional challenges to the OWTS regulations under the state and federal constitutions' Takings, Due Process, and Equal Protection Clauses.  The trial justice dismissed Mr. DiBiccari's complaint for failure to exhaust

- 1 -

administrative remedies.  For the reasons discussed in this opinion, we affirm the judgment of the Superior Court.

## Facts and Procedural History

As this case was decided on defendant's motion to dismiss, the facts are drawn from within the four corners of Mr. DiBiccari's complaint. *See Fuller Mill Realty, LLC v. Rhode Island Department of Revenue Division of Taxation*, 313 A.3d 377, 381 (R.I. 2024).

Mr. DiBiccari is the owner of a vacant property at 7 Fishermans Avenue in Westerly, Rhode Island (the property).  In October 2022, Mr. DiBiccari applied to DEM for a variance from the "Rules Establishing Minimum Standards Relating to Location, Design, Construction, and Maintenance of Onsite Wastewater Treatment Systems" (the regulations) so that he could install an OWTS to support the construction of a single-family home.  Mr. DiBiccari alleged in his complaint that his engineers designed a system that would satisfy the regulations' "general standard to grant a variance."  However, DEM denied his application pursuant to 250 RICR 150-10-6.52(B)(2)(e)(9) (Section 6.52(B)(2)(e)(9)) because the property's water table was zero inches from its original ground surface.

The plaintiff did not appeal DEM's denial of his variance request to DEM's Administrative Adjudication Division (the AAD).  Instead, he filed the instant action in the Superior Court asserting that an appeal to the AAD "would be futile" because

the AAD had no discretion to overturn DEM's denial of his variance request. In his complaint, Mr. DiBiccari sought monetary damages; declarations pursuant to the Uniform Declaratory Judgments Act that DEM's regulations, as applied to his request for a variance, violate the Takings Clauses of the state and federal constitutions (count one); and injunctive relief (count three). He also sought a declaration that Section 6.52(B)(2)(e)(9) is facially unconstitutional under the Takings, Equal Protection, and Due Process Clauses of both constitutions (count two).

The state filed a motion to dismiss pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure in which it argued that Mr. DiBiccari's complaint failed to state a claim for relief because (1) he failed to exhaust his administrative remedies and (2) the regulations were not unconstitutional. In opposition, Mr. DiBiccari argued that an appeal to the AAD would have been futile because the AAD had no discretion to override DEM's determination under Section 6.52(B)(2)(e)(9) and lacked the authority to adjudicate his constitutional challenges.

After argument and supplemental briefing, the trial justice issued a bench decision granting the state's motion to dismiss.[1] The trial justice found that Mr.

---

[1] At the parties' first hearing, the trial justice also indicated that she believed defendant's motion "probably should be converted to a motion for summary judgment." However, her final decision and order dismissed the claim under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. We review her decision accordingly.

DiBiccari failed to exhaust his administrative remedies and did not meet the futility exception that would allow him to circumvent an appeal to the AAD. The trial justice further found that Mr. DiBiccari could have challenged the denial of his claim administratively, stated that the AAD had the authority to grant a variance pursuant to 250 RICR 150-10-6.53(G), and appealed any adverse AAD decision to the Superior Court. She concluded that because Mr. DiBiccari failed to do so, however, the Superior Court could not adjudicate his claims. Consequently, the trial justice issued an order dismissing Mr. DiBiccari's complaint.

Mr. DiBiccari filed a notice of appeal from the order granting the state's motion to dismiss on October 15, 2023, prior to entry of final judgment.[2]

**Standard of Review**

"In reviewing the grant of a motion to dismiss pursuant to Rule 12(b)(6), this Court applies the same standard as the hearing justice." *Chariho Regional School District by and through Chariho Regional School Committee v. State*, 207 A.3d 1007, 1012 (R.I. 2019) (quoting *Rein v. ESS Group, Inc.*, 184 A.3d 695, 699 (R.I. 2018)). "The sole function of a motion to dismiss is to test the sufficiency of the complaint." *Pontarelli v. Rhode Island Department of Elementary and Secondary*

---

[2] This Court remanded the case to the Superior Court for entry of final judgment, which entered on March 14, 2025. The case subsequently returned to this Court. The plaintiff's appeal is timely under our rules. *See* Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure.

*Education*, 176 A.3d 472, 476 (R.I. 2018) (brackets omitted) (quoting *Narragansett Electric Company v. Minardi*, 21 A.3d 274, 277 (R.I. 2011)). In assessing the complaint's sufficiency, we "are confined to [its] four corners * * * and must assume all allegations are true, resolving any doubts in plaintiff's favor." *Narragansett Electric Company*, 21 A.3d at 278. "The motion may then only be granted if it appears beyond a reasonable doubt that a plaintiff would not be entitled to relief under any conceivable set of facts." *Multi-State Restoration, Inc. v. DWS Properties, LLC*, 61 A.3d 414, 417 (R.I. 2013) (deletion omitted) (quoting *Laurence v. Sollitto*, 788 A.2d 455, 456 (R.I. 2002)). Questions of law are reviewed by this Court *de novo*. *Johnston Equities Associates, LP v. Town of Johnston*, 277 A.3d 716, 738 (R.I. 2022).

**Discussion**

On appeal, Mr. DiBiccari specifies two errors. First, that the trial justice erred when she determined that Section 6.52(B)(2)(e)(9) did not apply on appeal before the AAD. And second, that the trial justice erred when she ruled that Mr. DiBiccari could challenge the constitutionality of Section 6.52 during an administrative appeal to the Superior Court, even though DEM and the AAD lack authority to review the constitutionality of those regulations.

Mr. DiBiccari's allegations of error require us to assess his as-applied and facial challenges separately. With respect to counts one and three of his complaint,

Mr. DiBiccari's as-applied challenges, we review whether he was required to exhaust administrative remedies prior to bringing his complaint in the Superior Court and conclude, as did the trial justice, that he was. With respect to his facial challenge, count two, we review whether the allegations in his complaint state a claim upon which relief can be granted, and we conclude that they do not. Accordingly, we affirm the trial justice's order granting the state's motion to dismiss, albeit in part on grounds other than those relied on by the trial justice.

### Exhaustion of Remedies for As-Applied Challenges

"[A] plaintiff aggrieved by a state agency's action first must exhaust administrative remedies before bringing a claim in court." *Richardson v. Rhode Island Department of Education*, 947 A.2d 253, 259 (R.I. 2008) (quoting *Arnold v. Lebel*, 941 A.2d 813, 818 (R.I. 2007)). Exhaustion "aids judicial review by allowing the parties and the agency to develop the facts of the case, and * * * promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, perhaps avoiding the necessity of any judicial involvement." *Doe ex rel. His Parents and Natural Guardians v. East Greenwich School Department*, 899 A.2d 1258, 1266 (R.I. 2006) (quoting *Almeida v. Plasters' & Cement Masons' Local 40 Pension Fund*, 722 A.2d 257, 259 (R.I. 1998)). "This Court recognizes 'an exception to the exhaustion requirement when exhaustion of administrative remedies would be futile.'" *Bellevue-Ochre Point Neighborhood Association v. Preservation Society of*

*Newport County*, 151 A.3d 1223, 1232 (R.I. 2017) (quoting *DeLuca v. City of Cranston*, 22 A.3d 382, 385 (R.I. 2011) (mem.)). Futility may be established when "a permit application is not a 'viable option' or where the permitting authority has made it 'transparently clear' that a permit will not be granted." *Cullen v. Town Council of Town of Lincoln*, 850 A.2d 900, 906 (R.I. 2004) (quoting *Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir. 1991)). But denial must be more than a "mere possibility" or even probability. *Id.* (quoting *Gilbert*, 932 F.2d at 61). Instead, "a sort of inevitability is required: the prospect of refusal must be certain (or nearly so)." *Id.* (quoting *Gilbert*, 932 F.2d at 61). A party seeking to plead futility to avoid administrative appeals "bears the burden of establishing futility and any doubt must be resolved against the party." *Id.*

Notwithstanding our preference for administrative finality, Mr. DiBiccari argues that his appeal to the AAD would have been futile because the AAD would simply reaffirm DEM's denial of his variance request under Section 6.52(B)(2)(e)(9). In support of this argument, Mr. DiBiccari points to Section 6.52(B)(2)(e)(9)'s mandatory language that a variance request "shall be denied" where, as here, a property has "a depth to groundwater from original ground surface of less than twelve inches * * *." That regulatory requirement, he argues, applies equally to the AAD on appeal and would have forced them to deny his variance request, therefore it would have been futile to appeal to the AAD only to have them

affirm DEM's denial. We disagree. *See Murphy v. Zoning Board of Review of Town of South Kingstown*, 959 A.2d 535, 541 (R.I. 2008) ("[C]onstruction of a regulation is a question of law to be determined by the [C]ourt.") (quoting 2 Am. Jur. 2d *Administrative Law* § 245 at 221 (2004)).

DEM and the AAD review applications for a variance from the minimum standards for an OWTS under two distinct regulatory provisions. DEM conducts its review under the provision that Mr. DiBiccari has identified—Section 6.52. At that "preliminary review" stage, DEM assesses the application "for the purpose of determining whether such variance(s) would be contrary to the public health, the public interest or the environment." Section 6.52(A). The regulations identify fifteen factors that mandate denial of an applicant's variance request. *See* Section 6.52(B)(2). DEM's review of the application results in a recommendation that the director of DEM subsequently adopts, modifies, rejects, or remands for further review. *See* Section 6.52(C), (D).

Where the director denies an application, the regulations grant an applicant for a variance the opportunity to appeal to the AAD pursuant to a different regulatory provision—Section 6.53. *See* 250 RICR 150-10-6.53 (Section 6.53). That section grants the AAD the power to "grant a variance from a provision of these Rules * * * where it is determined" that "[(1)] [a] literal enforcement of such provisions will result in unnecessary hardship to the applicant; [(2)] [t]hat the OWTS will function

- 8 -

as proposed in the application; and [(3)] [t]hat the permit or variance sought will not be contrary to the public interest, public health and the environment." Section 6.53(G)(1)-(3).

As the trial justice correctly observed in issuing her decision from the bench, "[n]othing in the language of 6.53 prohibits AAD from granting a variance from the agency's general water-table requirements, notwithstanding that DEM staff are so constrained by 6.52(B)(2)(e)(9) during the initial variance process." Likewise, we conclude that the AAD's denial of Mr. DiBiccari's application for a variance was not sufficiently "certain" to invoke the futility exception to the exhaustion requirement. *Cullen*, 850 A.2d at 906. Rather, on appeal to the AAD, the AAD would have reviewed the application under its unique standard of review to determine whether there was any reason to grant a variance from the minimum standards, notwithstanding the property's noncompliance with Section 6.52(B)(2)(e)(9). Accordingly, we affirm the trial justice's decision to grant the state's motion to dismiss counts one and three of plaintiff's complaint on the basis that he failed to exhaust administrative remedies.

Nevertheless, plaintiff argues that he was not required to exhaust his administrative remedies because the AAD lacks authority to review claims regarding the constitutionality of the OWTS regulations. Counts one and three of Mr. DiBiccari's complaint asserted as-applied challenges, however. Although an agency

is typically without authority to review facial challenges to the constitutionality of its own regulations, our caselaw makes clear that an applicant must exhaust administrative appeals in order to bring as-applied constitutional challenges. *See, e.g.*, *Burns v. Sundlun*, 617 A.2d 114, 117 (R.I. 1992) (rejecting requirement of exhaustion for facial challenges because "there [is] no factual development that could occur at the agency level to assist [a] court in its judicial review" but maintaining it for as-applied challenges to avoid a court's "needless determination of a matter that could have been resolved by [an appellate body's] decision to grant a variance or an exception to [the regulations]"). Accordingly, we affirm the order of the Superior Court dismissing counts one and three of plaintiff's complaint because a decision by the AAD to reverse DEM's denial of Mr. DiBiccari's application for a variance would have eliminated the necessity for this Court to review the constitutionality of the regulations. *See id.*

## Facial Challenges to the Regulations

Count two seeks a declaratory judgment that the OWTS regulations are *facially* unconstitutional—a type of claim that this Court has held does not require exhaustion of administrative remedies prior to the initiation of an action. *See Key v. Brown University*, 163 A.3d 1162, 1171 (R.I. 2017); *Burns*, 617 A.2d at 117; *see also Taylor v. Marshall*, 119 R.I. 171, 179-80, 376 A.2d 712, 716-17 (1977). After assessing Mr. DiBiccari's takings, equal protection, and due process claims,

- 10 -

however, we conclude that they are also insufficient to withstand scrutiny under Rule 12(b)(6). *See Evoqua Water Technologies, LLC v. Moriarty*, 334 A.3d 429, 435 (R.I. 2025) (affirming dismissal on grounds other than those relied on by the trial justice).

**Takings Clause**

Mr. DiBiccari alleges that the OWTS regulations amount to an unconstitutional taking under the state and federal constitutions because "the inability to obtain [a] variance [under Section 6.52(B)(2)(e)(9)] prevents residential landowners such as Plaintiff from making any beneficial use of their properties as they may not obtain a building permit to construct a residence on residential property * * *." In its memorandum in support of its motion to dismiss, and before this Court, the state argued that plaintiff's allegations do not support a conclusion that the regulations operate as an unconstitutional regulatory taking and that his allegations are not ripe.

We agree that plaintiff's allegation of an uncompensated regulatory taking is not ripe for this Court's review. *See Soundboard Association v. Federal Trade Commission*, 888 F.3d 1261, 1274 n.6 (D.C. Cir. 2018) (noting analytical distinction between exhaustion and ripeness). The general rule under the Fifth Amendment to the United States Constitution, and article 1, section 16 of the Rhode Island Constitution is that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Alegria v. Keeney*, 687 A.2d 1249,

1252 (R.I. 1997) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)); *see Cranston Police Retirees Action Committee v. City of Cranston by and through Strom*, 208 A.3d 557, 581 (R.I. 2019) (analyzing as coextensive the Takings Clauses of the state and federal constitutions). A regulation "goes too far" when it "does not substantially advance legitimate state interests * * * or denies an owner economically viable use of his land." *Alegria*, 687 A.2d at 1252 (quoting *Agins v. Tiburon*, 447 U.S. 255, 260 (1980)).

A landowner cannot establish a taking, however, "before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001). That rule, summarized by a decision of the United States Supreme Court in a different case arising out of Westerly, Rhode Island, "responds to the high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer." *Id.* (quoting *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 738 (1997)). A takings claim becomes ripe only "once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty * * *." *Id.* By contrast, where a landowner has not "followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion * * * *including the opportunity to grant any variances or waivers allowed*

- 12 -

*by law*[,] * * * the extent of the restriction on property is not known and a regulatory taking has not yet been established." *Id.* at 620-21 (emphasis added).

Here, Mr. DiBiccari's claim is not ripe because the AAD has not had the opportunity to decide and explain the reach of its own regulations under Section 6.53, nor has it had the opportunity to grant a variance as permitted under the regulations. As discussed above, the AAD has a high degree of discretion to reject, modify, adopt, or remand the determination of DEM; as such, we do not know whether, upon review by the AAD, Mr. DiBiccari would have been entitled to build the single-family residence for which he applied. *See Palazzolo*, 533 U.S. at 621 (permitting a plaintiff to bring claims where there was "no doubt" that plaintiff would not be able to fill or develop the wetlands on his property, and therefore "[f]urther permit applications were not necessary to establish [that] point"). Mr. DiBiccari has not stated a claim for an unconstitutional taking because, unlike in *Palazzolo*, the AAD retains the authority to grant him a variance. Until it declines to do so, "the extent of the restriction on property is not known and a regulatory taking has not yet been established." *Id.* Thus, we affirm the dismissal of Mr. DiBiccari's takings claim on these grounds, albeit different ones than relied on by the trial justice.

- 13 -

**Equal Protection and Substantive Due Process**

Mr. DiBiccari's equal protection and substantive due process claims similarly fail to state a claim for relief. In his complaint, Mr. DiBiccari alleges that the regulation creates an impermissible classification between "landowners who may obtain approval from DEM of OWTS applications * * * and landowners who may not obtain such approval" because their properties do not satisfy Section 6.52(B)(2)(e)(9); and that Section 6.52(B)(2)(e)(9) "creates an arbitrary classification of landowners that adversely impacts fundamental rights." We conclude, however, that the regulations violate neither the Equal Protection Clause nor the substantive Due Process Clause of the state or federal constitution because they neither discriminate on the basis of a suspect class nor do they interfere with a fundamental right.

Under the Equal Protection Clause, "similarly situated entities must be accorded similar governmental treatment." *Barrington Cove Limited Partnership v. Rhode Island Housing and Mortgage Finance Corporation*, 246 F.3d 1, 7 (1st Cir. 2001). Nevertheless, that principle does not require that every statute or regulation "apply equally to all persons. * * * Or require that things which are different in fact * * * be treated in law as though they were the same." *Mackie v. State*, 936 A.2d 588, 596 (R.I. 2007) (brackets omitted) (quoting *Kleczek v. Rhode Island Interscholastic League, Inc.*, 612 A.2d 734, 737 (R.I. 1992)).

- 14 -

The OWTS regulations make a permissible classification between "things which are different in fact." *Mackie*, 936 A.2d at 596 (quoting *Kleczek*, 612 A.2d at 737). They distinguish between parcels of land where the depth to groundwater is less than twelve inches and those where it is greater than twelve inches. Given that the regulations permissibly distinguish between landowners whose lots are materially different, we simply evaluate whether the state has a rational basis for the classification. *See Rhode Island Depositors Economic Protection Corporation v. Brown*, 659 A.2d 95, 100 (R.I. 1995). Here, the identified basis for the regulation is the protection of groundwater. *See* G.L. 1956 § 42-17.1-2(1), (11) (establishing DEM's mandate to protect, among other things, groundwater). Given that the OWTS regulations bear a rational relationship with that stated purpose, there is no set of facts under which Mr. DiBiccari could allege that the regulation violates the Equal Protection Clause. Therefore, his equal protection claim fails to state a claim for relief.

Mr. DiBiccari also argues that the regulations violate substantive due process insofar as they violate certain fundamental rights. *See State v. Germane*, 971 A.2d 555, 583 (R.I. 2009) ("The due process clause of the federal constitution (and the parallel provision of our state constitution) 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'") (footnotes omitted) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

- 15 -

Fundamental rights include "explicit constitutional rights, such as those guaranteed by the [Bill of Rights or our constitution's Declaration of Rights], or upon interests fundamental to our society of ordered liberty, such as the right to travel or to privacy." *Federal Hill Capital, LLC v. City of Providence by and through Lombardi*, 227 A.3d 980, 987-88 (R.I. 2020) (brackets omitted) (quoting *In re Advisory Opinion to House of Representatives Bill 85-H-7748*, 519 A.2d 578, 582 (R.I. 1987)). Where a regulation affects fundamental rights, this Court will review the nature of the right in order to determine the appropriate level of scrutiny with which to review the regulation. *Riley v. Rhode Island Department of Environmental Management*, 941 A.2d 198, 205-06 (R.I. 2008).

Mr. DiBiccari's complaint does not trigger the substantive Due Process Clause because it neither alleges a violation of a fundamental right nor identifies an interest fundamental to our society of ordered liberty. *See Riley*, 941 A.2d at 205-06. Rather, this Court has said that a property owner has no vested right "in maximizing the value of his property." *Annicelli v. Town of South Kingstown*, 463 A.2d 133, 140 (R.I. 1983). Accordingly, there is no set of facts under which Mr. DiBiccari could establish a violation of the substantive Due Process Clause, and we therefore affirm the dismissal of that element of count two.

## Procedural Due Process

Finally, count two asserts a procedural due process violation insofar as it argues that landowners are denied the ability to prove to "DEM's satisfaction at a hearing" that their OWTS will not be contrary to public health. This assertion, however, is refuted by our discussion of the structure of the AAD's appellate standard of review. *See* Section 6.53. Under that standard, the AAD has the authority to review whether the proposed OWTS will be contrary to public health, the public interest, or the environment, in addition to providing applicants whose requests were denied with the opportunity to present their objections to that denial. *See Resendes v. Brown*, 966 A.2d 1249, 1254 (R.I. 2009); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Based on our review of the regulations at issue in this appeal, we are satisfied that they provide Mr. DiBiccari with a meaningful opportunity to challenge the basis of the denial of his variance. *See Matthews*, 424 U.S. at 333. Accordingly, we conclude that his complaint fails to state a claim that the regulations violate the procedural Due Process Clauses of the state or federal constitution.

**Conclusion**

For the reasons contained in this opinion, we affirm the trial justice's decision to dismiss Mr. DiBiccari's complaint for failure to exhaust administrative remedies as to counts one and three, and we likewise affirm the dismissal for failure to state a claim on which relief could be granted as to count two. Therefore, the judgment of the Superior court is affirmed.

We remand the papers to the Superior Court.

Chief Justice Suttell did not participate.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Nicholas DiBiccari v. State of Rhode Island et al. |
| **Case Number** | No. 2023-353-Appeal.<br>(WM 23-54) |
| **Date Opinion Filed** | March 10, 2026 |
| **Justices** | Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sara Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Kelly M. Fracassa, Esq. |
| | For Defendants:<br><br>Randelle L. Boots, Esq.<br>Department of Attorney General |